**FEAR RANCHES, INC., Appellant,**

v.

**H. C. BERRY, d/b/a Berry Ranch Co.,
et al., Appellees.**

**No. 72–1221.**

United States Court of Appeals,
Tenth Circuit.

Dec. 18, 1972.

Milton A. Oman, Salt Lake City, Utah, on the brief for appellant.

Thomas A. Donnelly, of Catron, Catron & Donnelly, Santa Fe, N. M., and George T. Harris, Jr., of Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque,

N. M., on the brief for appellees, H. C. Berry, d/b/a Berry Ranch Co., and Berry Land and Cattle Co., Inc.

Charles D. Alsup, of Krehbiel & Alsup, Clayton, N. M., and Charles C. Spann, of Grantham, Spann, Sanchez & Rager, Albuquerque, N. M., on the brief for appellee, Kelly Perschbacker.

Before JONES *, SETH and DOYLE, Circuit Judges.

SETH, Circuit Judge.

This is an action for damages brought by the buyer of cattle against the sellers. The complaint alleges that the cattle had a disease known as brucellosis when purchased, and could not be used for breeding as the buyer planned. The complaint also alleges that these cattle infected other cattle of plaintiff when they were put out to pasture together; that it thereby became necessary to test a large number of cattle for the disease. Further, it was alleged that plaintiff's ranch was quarantined by reason of the presence of the disease, causing additional expenses and losses. The plaintiff asserted that an implied warranty of fitness for a particular purpose, or an implied warranty of merchantability was breached.

The case was tried to the court without a jury, and judgment was given for the defendants. The plaintiff has taken this appeal.

The record shows that the plaintiff corporation, through its president, Mr. Kenneth Fear, Sr., was looking for cattle to stock its ranch in Wyoming. Mr. Fear was put in touch with two Texas cattle traders who showed him the cattle in question on the ranch of defendant, H. C. Berry, near Lucy, New Mexico. Two trips were made to look over the cattle. The defendants were not present at these visits and knew nothing of them at the time. Mr. Fear satisfied himself that these cattle were what he wanted. He so advised the traders he would buy, but it developed they did not have au-

thority to sell the cattle, and they advised Mr. Fear to contact the defendant, Mr. Kelly Perschbacker. A few days later Mr. Fear called Mr. Perschbacker on the phone at his ranch near Clayton, New Mexico, which is some considerable distance from Lucy. During the conversation Mr. Fear agreed to buy the cattle, and Mr. Perschbacker to sell them. The sale was so made subject to the buyer's right to reject ten per cent, and subject to loading on trucks arranged for by the buyer at the Lucy ranch. During this conversation it was agreed that the two would meet at Lucy and the buyer would there take delivery. The stock was so delivered to the trucks after the cut agreed upon was made by the buyer. The gathering and selection took about two days with the parties and their cowboys helping. The cattle were then trucked by the buyer to his ranch in Wyoming, where they were run with other cattle.

About six months after the buyer had taken delivery he was advised that some of his herd was infected with brucellosis. Further, and extensive, testing was done, and shortly thereafter the portion of his ranch where the cattle in question were run together with other cattle of the buyer was quarantined by federal authorities. The result was that the buyer decided to send to slaughter all of the cattle on this portion of his ranch, some 1,600 head, to prevent the spread of the disease. The defendants did not know of this problem of the buyer until he had disposed of the cattle and had brought this action.

The record shows that brucellosis or Bang's disease is very contagious, and may be spread by cattle through contact with each other, and may also be contracted from individuals who have handled diseased cattle, or from trucks in which infected cattle have been transported. The disease causes cows to have a high rate of abortion, and makes them unfit for breeding purposes. The disease does not otherwise affect cattle and

* Of the Fifth Circuit, sitting by designation.

does not affect their growth nor make them unfit for human consumption. It has a sixty-day incubation period. The disease cannot be detected by a visual examination of infected stock, as a blood test is required to determine its presence. New Mexico at the time in question was classified as a "modified certified" area with reference to the incidence of brucellosis. Thus the disease was present in less than one per cent of· the cattle in the state and in less than five per cent of the herds in the state.

Some question was raised during the course of the trial as to the ownership of the cattle at the time of sale to Mr. Fear. The record shows, and the trial court found, they had been sold shortly before by the defendants Berry to the defendant Perschbacker. Mr. Perschbacker had made no more than a down payment, and it was therefore agreed that the cattle would not be rebranded and would remain on the Berry ranch at Lucy until Mr. Perschbacker resold them. This was to provide security for Mr. Berry and to provide a place where they could be kept and shown by Mr. Perschbacker. This arrangement required Mr. Berry to sign as seller when the cattle were loaded after the sale was made by Mr. Perschbacker to Mr. Fear, as they bore his brand.

Mr. Berry was a rancher who had theretofore sold to packers, and this was his first sale to other than a packer. Mr. Perschbacker was a rancher, but was also active as a trader and was so bonded.

The trial court found that no representations nor warranties were made by either defendant to the buyer as to the condition of the cattle. It also found that the buyer exercised his own skill and judgment in the selection of the cattle he wanted. The court further found that the buyer did not tell the defendants what his plans were for the cattle purchased nor was there any discussion of the nature of the buyer's ranching activities.

The trial court concluded that the cattle were merchantable, but made no findings as to when or where the disease may have been contracted, and made no finding as to custom in New Mexico relative to implied warranty as to the absence of disease in sales of cattle of this type.

The trial court concluded that neither appellee Berry nor Berry Land and Cattle Company, Inc. were merchants under the Uniform Commercial Code, but that defendant Perschbacker was. The appellant urges this as error under the Code definition at N.M.S.A.1953 Comp. § 50A-2-104, and that Cook Grains, Inc. v. Fallis, 239 Ark. 962, 395 S.W.2d 555, is not precedent.

■ The record shows, and the trial court found, that defendants Berry had theretofore sold all cattle they raised or fed to packers; that the sale to Perschbacker was the first sale to a non-packer, and "was forced by financial difficulties." Thus this sale was the dealing in a different classification of stock than this cow and calf sale for resale. This was a sufficiently different type of business and type of goods than theretofore sold. This is a sufficient difference to support the trial court's conclusion. It is not sufficient to say that Berry had always dealt in "cattle," as such a category includes too many entirely different "goods." As to defendant Perschbacker, he was a trader and bought and resold, and acted as agent for sales of cow and calf units, as well as steers, heifers, feeders, and other "goods."

■ As indicated above, the trial court found that no express representations were made. The court also found:

"Kenneth Fear, Sr. at all times exercised his own skill and judgment in the selection of the cattle he wanted from the herd and he did not rely on either Perschbacker or Berry in making such selection."

and

"Kenneth Fear, Sr. did not tell either defendant what his plans were

for the cattle he purchased from them and they did not inquire nor was there any discussion of the kind of ranching activity Fear Ranches, Inc. was engaged in."

By these above two findings, the trial court would seem to have precluded a conclusion that an implied warranty of fitness for a particular purpose could exist under N.M.S.A.1953 Comp. § 50A–2–315, although no such conclusion was expressly made. We must agree because the record clearly supports the trial court's findings. The evidence shows the plaintiff to have relied on his own judgment, and to have decided to buy before ever seeing or talking to the defendants. He also made the cuts at the time of delivery in the exercise of his own judgment.

■ As to an implied warranty of merchantability, the trial court took evidence as to usage of trade in New Mexico but made no finding of fact relating thereto. The trial court concluded the cattle were merchantable, but made no finding of fact as to whether some had brucellosis at the time, or whether they contracted it later, or whether this made no difference. We have before us no finding of fact to support the conclusion as to merchantability. The trial court's conclusion could have been based on custom and usage relative to the presence or absence of this disease at time of sale —"merchantable" thus meaning that by custom there existed no implied warranty of freedom from brucellosis. However, this is speculation and may be entirely wrong. Thus it is necessary to remand the case to the trial court for findings relative to custom and usage and relative to merchantability.

The trial court found that defendant Perschbacker was the owner of the cattle at the time of sale to plaintiff. This is supported by the record; thus he was the seller to plaintiff.

As to the cross-claim by defendant Perschbacker against defendants Berry, the Code does not apply, and we find no error in the trial court's dismissal unless

on remand the finding relative to usage in such a transaction dictates a different result.

The judgment of the trial court is vacated, and the case is remanded.