**CONTINENTAL GRAIN COMPANY, a Delaware Corporation, Plaintiff,**

v.

**Lawrence HARBACH, Defendant.**

**No. 74 C 19 WD.**

United States District Court, N. D. Illinois, W. D.

Sept. 9, 1975.

Robert A. Fredrickson, Reno, Zahm, Folgate, Skolrood, Lindberg & Powell, Rockford, Ill., F. Thomas Olson, Charne, Glassner, Tehan, Clancy & Taitelman, Milwaukee, Wis., for plaintiff.

Woodruff A. Burt, Kroeger, Burt & De Mik, Freeport, Ill., Frederic J. Artwick, Sidley & Austin, Chicago, Ill., for defendant.

## MEMORANDUM DECISION

MARSHALL, District Judge.

Plaintiff, Continental Grain Company, a Delaware Corporation with its principal place of business in New York, brought this action for breach of a grain sales contract involving over $10,000 against defendant, Lawrence Harbach, an Illinois farmer. The only issue currently pending for decision is whether defendant was a merchant when the alleged contract was made, within the meaning of the Uniform Commercial Code (Code). Ill.Rev.Stat., ch. 26, § 1–101 et seq. (1973).[1] Diversity jurisdiction is present. 28 U.S.C. § 1332 (1970). Illinois law is controlling. 28 U.S.C. § 1652 (1970). This memorandum constitutes findings of fact and conclusions of law required by Fed.R. Civ.P. 52(a).

On February 21, 1973, the parties allegedly entered into an oral contract for the sale of grain over the telephone. Defendant agreed to sell and plaintiff agreed to buy 25,000 bushels of number one yellow soybeans for $3.81½ per bushel. Delivery and payment were to be deferred until October, November, and December of 1973. Plaintiff allegedly confirmed the contract by mailing a written confirmation to defendant. This confirmation was intended to satisfy the "merchant exception" to the Code Statute of Frauds. Defendant denies he ever received the written confirmation and consequently failed to give written notice of his objection to it within 10 days of receipt. When delivery was due in October, defendant refused to ship the soybeans to plaintiff, and refused to pay plaintiff damages caused by his nondelivery.

Defendant denies that the contract exists and asserts that even if the parties entered into a contract, the Statute of Frauds bars its enforcement. He claims

1. The factual issues of whether a contract was actually made, or whether defendant received a written confirmation of the alleged oral agreement, are not currently before the court.

that the "merchant exception" does not apply because farmers are not merchants in Illinois under the Code. Alternatively, he claims that even if a farmer can be a merchant under the Code, he was not a merchant with respect to the sale of soybeans on February 21, 1973.

The Code Statute of Frauds provides:

"Except as otherwise provided in this Section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing." Ill.Rev.Stat., ch. 26, § 2–201 (1973).

The "merchant exception" provides:

"Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received." Ill.Rev. Stat., ch. 26, § 2–201 (1973).

The Code definition of "Merchant" provides:

" 'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill." Ill. Rev.Stat., ch. 26, § 2–104 (1973).

Of the numerous ways to satisfy the Code definition of merchant,[2] only two are relevant here. First, a merchant is one who deals in goods of the kind. Second, a merchant is one who by his occupation holds himself out as having knowledge peculiar to the practices involved in the transaction. Under the facts presented here, the principal-agent definition of merchant need not be considered.

The parties stipulated to all facts bearing on the merchant issue. According to the stipulation, plaintiff's business consists of buying, selling, storing and transporting grain. Plaintiff operates an office in Chicago and a purchasing office and grain elevator in Dubuque, Iowa. Plaintiff's Iowa office buys grain from Illinois, Iowa, Minnesota and Wisconsin. (Stipulations §§ 1, 2, 8). The price plaintiff pays for grain varies according to its grade, which depends upon the grain's weight per bushel, percentage of moisture, percentage of damage, and amount of foreign material. (*Id.* § 5).

Plaintiff generally buys grain according to spot purchase contracts or forward contracts. If a spot purchase contract is used, the contract price is the market price at the date of delivery. If the parties form a forward or futures contract, as plaintiff claims occurred here, buyer agrees to pay a price fixed in advance, which may be different than the market price when delivery is due. Seller agrees to deliver a stated quantity during a specific future time. (*Id.* §§ 3, 4).

Trading under forward contracts entails risks due to market fluctuations. Buyer shoulders the risk that the market price will be depressed at harvest time when goods are plentiful. Seller accepts the risk that market prices will

2. In D. Newell, "The Merchant of Article 2," 7 Val.U.L.Rev. 306, 315 (1973), 13 possible definitions of "merchant" are extracted from the Code.

rise sharply and top the agreed forward price by the delivery date. Plaintiff has adopted several procedures to minimize its risk. First, plaintiff sets prices for its forward contracts bearing a "predetermined relationship" to the prevailing price for comparable purchases of comparable grain on the Chicago Board of Trade. (*Id.* § 4). Plaintiff's Chicago office establishes this price relationship and teletypes the latest statistics concerning market prices and the price relationship to its Iowa branch. Plaintiff further controls its risk by "hedging" on the Chicago Board of Trade. That is, plaintiff makes a sale on the Board of Trade which corresponds with each purchase made by the Iowa office. Because purchases at the Iowa office should reflect the most recent market prices, they are "almost always" negotiated over the telephone and later confirmed with the seller by mail. (*Id.* §§ 6, 7, 9).

According to the stipulation, defendant has engaged in a variety of agricultural pursuits throughout his working life. From 1938 to 1958, he operated his parents' farm in Illinois. He has owned or managed three fertilizer and chemical businesses during the last 15 years. He has also owned and leased farmland and is an authorized tractor dealer. (*Id.* §§ 10, 12, 13, 14, 17).

Most significantly, defendant has raised and sold grain as a sole proprietor and as president of a farming corporation for several years. He has participated in field work and supervised managers who grew corn, potatoes, and most recently, soybeans. During the last few years, he sold most of his corn crop from the sole proprietorship on a forward contract basis. The amount of corn sales has averaged more than $100,000 for each year since 1970. Many of the sales from the farming corporation were also negotiated under forward contracts. (*Id.* §§ 15, 18, 19, 20).

Defendant stipulated that he understands that forward contracts are often made by telephone, and that buyers then confirm them in writing. Defendant is

also familiar with the Chicago Board of Trade and its constant fluctuations. He has made commodities futures contracts for soybeans, corn and potatoes on the Board of Trade through a brokerage company. He also entered into forward contracts for the sale of soybeans in 1973 with buyers other than plaintiff. (*Id.* §§ 21, 22, 23, 24). Finally, the parties stipulated that defendant knew that the "contract price" for soybeans for October and November of 1973 ranged between $4.29 and $4.09 per bushel in January of 1973 and that soybean prices rose dramatically during 1973. This fact alone suggests that defendant claims he is not a merchant in an effort to escape from a contract which hindsight proved unwise. (*Id.* § 24.)

Until very recently, the Illinois Supreme Court had not decided whether a farmer can also be a merchant under the Code. The Illinois appellate courts were split on the issue. *Sierens v. Clausen,* 21 Ill.App.3d 450, 315 N.E.2d 897 (3d Dist.1974) (farmer is not a merchant); *Campbell v. Yokel,* 20 Ill.App.3d 702, 313 N.E.2d 628 (5th Dist.1974) (farmer is a merchant); *Oloffson v. Coomer,* 11 Ill. App.3d 918, 296 N.E.2d 871 (3d Dist. 1973) (farmer is not a merchant). In light of this uncertainty, the parties constructed elaborate arguments in support of their respective positions, drawing freely from secondary sources and decisions of other jurisdictions.

After all the briefs were filed on the instant issue, the Illinois Supreme Court held that a farmer who sells his crops can be a merchant at the time of sale, reversing *Sierens, supra. Sierens v. Clausen,* 60 Ill.2d 585, 328 N.E.2d 559 (1975). In *Sierens,* the operators of a grain elevator brought an action against a farmer who allegedly breached two oral forward contracts to sell soybeans to the plaintiffs. Plaintiffs claimed that they had confirmed the oral contract in writing pursuant to the "merchant exception" to the Code Statute of Frauds, and in accordance with the usual customs of the grain business.

Plaintiffs further alleged that defendant was familiar with these customs. Defendant claimed that he was a farmer and not a merchant. The trial court held that defendant was not a merchant and dismissed the action. The appellate court affirmed, reasoning that the defendant farmer was only a "casual seller" and was in the business of growing rather than selling grain. The Supreme Court reversed, resting on facts revealed in defendant's answers to interrogatories. These answers showed that defendant had farmed for 34 years, had cultivated over 300 acres of corn and soybeans, and had sold his crops to grain elevators both under cash sales and futures contracts for at least five years. The court held:

> "The practice of grain and soybean growers in selling their products in the manner described in plaintiffs' amended complaint is well known and widely followed. We know of no reason why under the circumstances shown here the defendant, admittedly a farmer, cannot at the time of the sale be a 'merchant.'" 328 N.E.2d at 561.

This decision commands an appraisal of defendant Harbach's circumstances to determine whether his experience and knowledge subject him to the obligations of merchants.

At first glance, the circumstances of defendant Harbach seem remarkably similar to those of the defendant in *Sierens*. Both defendants had been farmers for many years. Both grew large amounts of corn and soybeans. Both were familiar with the customs and usages of cash sale contracts and forward contracts. Defendant, relying on the favorable opinion of the appellate court in *Sierens*, stressed the factual similarity between himself and the *Sierens* defendant farmer. (Brief for Defendant at 50).

There is one factual difference between the two defendants which merits consideration. The *Sierens* defendant had sold the exact commodity involved in the disputed contract, soybeans, for five years. Defendant Harbach had only sold soybeans for a few months. Defendant urges that he lacked the experience in selling soybeans to be classified as a dealer in goods of the kind under the first part of the Code definition of merchant. Some decisions do suggest that length of experience may be a factor in determining whether a person deals in goods of the kind. *Campbell v. Yokel, supra* (farmer who sold for several years is a merchant); *Fear Ranches Inc. v. Berry*, 470 F.2d 905 (10th Cir. 1972) (rancher was not a merchant with respect to his first sale to a non-meat packer). Nevertheless, defendant's lack of experience in selling soybeans alone is not enough to refute his status as a merchant. One reason is that defendant has failed to show that corn and soybeans are too different to be goods of the same kind. Both commodities are grain, and defendant is certainly a merchant as to sales of corn.

We need not decide whether corn and soybeans are goods of the same kind because defendant is clearly a merchant under the second part of the Code definition, one who by his occupation holds himself out as having knowledge in the practice involved in the transaction. Defendant admitted he had sold large quantities of corn, as well as smaller quantities of potatoes and soybeans under forward contracts for five or six years. He admitted that he has traded on the Chicago Board of Trade and that he keeps up with market news. Nothing in any of the briefs indicates that the method of making forward contracts for corn differs in any respect from those for soybeans. These activities are surely sufficient to prove that defendant is a merchant.

Defendant nevertheless claims that he never made an affirmative representation that he possessed skills as to selling soybeans. In view of his actual knowledge and business experience, no additional positive representation is necessary.

Both parties debated whether anyone with general business knowledge, who can be expected to answer mail, should be a merchant for the purposes of the "merchant exception" to the Statute of Frauds. *See* Uniform Commercial Code Comment to § 2–201. We need not resolve this question because defendant clearly had more than general business knowledge. He was familiar with the specific confirmation practices commonly used in oral forward contracts.

Finally, defendant attempts to distinguish between growing soybeans and selling them. He claims that at best he was a merchant only with respect to growing soybeans. Even if it were possible to thus parse these two stages of commercial agriculture, our decision rests on defendant's familiarity with the business practices involved, and not his knowledge of selling soybeans specifically.

For the foregoing reasons, we hold that defendant was a merchant under the Code with respect to the oral contract he allegedly made with plaintiff on February 21, 1973. Judgment will enter for plaintiff and against defendant on the issue of whether defendant was a merchant.