**Carroll NELSON, Appellant,**

v.

**UNION EQUITY CO–OPERATIVE EXCHANGE, Appellee.**

**No. 17719.**

Court of Civil Appeals of Texas, Fort Worth.

April 23, 1976.
Rehearing Denied May 21, 1976.

Law Offices of Ralph W. Nichols, and J. Steven King, Fort Worth, for appellant.

Cantey, Hanger, Gooch, Cravens & Munn, and R. Daniel Settle, and S. G. Johndroe III, Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

Union Equity Co-operative Exchange, as plaintiff, sued Carroll Nelson, as defendant, alleging damages by reason of Nelson's failure to deliver 5,000 bushels of wheat @ $3.56 per bushel as promised orally. The oral transaction of agreement of sale and purchase had been followed immediately by written confirmation mailed by Union Equity to Nelson, as contemplated by the Uniform Commercial Code, Texas Business and Commerce Code, Sec. 2.201, "Formal Requirements; Statute of Frauds."

Subsection (b) of Sec. 2.201 provides: "Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of Subsection (a) against such party unless written notice of objection to its contents is given within 10 days after it is received."

In other words plaintiff Union Equity declared upon a cause of action which was good as against defendant Nelson if it established by proof and obtained finding of fact in accord that (1) Nelson was a "merchant" as applied to the particular transaction of oral agreement of sale and purchase, (2) that Union Equity did promptly after the making of the agreement mail its writing in confirmation to Nelson, (3) that Nelson received such writing in confirmation, and (4) that Nelson did not, within 10 days after receipt, give Union Equity a written notice of objection.

Trial was before the court without a jury. Judgment was rendered for an amount in damages in favor of Union Equity and against Nelson; followed by findings of fact and conclusions of law which purported to show that Union Equity had discharged its burden of proof and to obtain findings in its favor entitling it to judgment. Nelson appealed.

Judgment is affirmed.

The important question is whether the proof of Union Equity entitled the court, as the fact finder, to determine that Nelson was a "merchant" within the meaning and intent of Sec. 2.201 of the Code. We will, however, first make disposition of the points of error on other matters.

By these was contention of insufficiency in the evidence to support the conclusion of law that the written confirmation mailed by Union Equity constituted an enforceable contract, and of insufficiency in the evidence to support the findings of fact that there was in fact a receipt thereof by Nelson, pursuant to the mailing by Union Equity, or that there was sufficient proof of the mailing of such written confirmation of the oral agreement of the parties to entitle the court to infer receipt thereof by Nelson.

The instrument of confirmation by Union Equity reads substantially as follows: "Union Equity Cooperative Exchange, 806 Commerce Building, 307 West 7th Street, Ft. Worth, Texas, 76102: PURCHASE No. 2572: BOUGHT FROM: Carroll Nelson, 114 West Jackson, Mangum, Oklahoma, 73554: QUANTITY: 5,000 Bushels; COMMODITY & GRADE: # 1 Hard Winter WHEAT: PRICE: $3.56 per. bushel; PRICE BASIS: Delivered our Elevator Saginaw, Texas. . . . SHIPPING TIME: Deliver by August 31, 1973; DRAW DRAFT THROUGH: We will mail check on delivery; REMARKS: Our Contract # 2572; CONDITIONS OF PURCHASE: We do not accept any liability (save for our negligence) if grain arrives otherwise than billing instructions. Please mail separate invoice on each car and draw draft, with bill of lading attached, on us at Ft. Worth, Texas, allowing sufficient margin to protect weights and grades. We reserve the right to cancel, extend time of shipment, or to fill here or elsewhere, at our option, any contract not filled within contract time, and any loss resulting therefrom to be paid by seller. This contract subject to all rules of the National Grain Dealers Association. CONFIRMING BUYER: Copeland SELLER: Nelson. DATE: August 1, 1973. UNION EQUITY COOPERATIVE EXCHANGE, By _____."

The foregoing was not the original instrument, which according to the evidence had been mailed to Nelson according to normal business usage and practice relative to mailing by Union Equity and would have been the instrument bearing signature. The copy which was produced bore the stamp of the home office of Union Equity in Oklahoma showing receipt of such copy by that office on August 2, 1973. Evidence of the business usage of Union Equity was that such copy is mailed out to Oklahoma in the same mail by which the original goes to a contract seller, in the present instance to Nelson. Nelson testified that he did not receive the original of such instrument.

■ We hold that the instrument conforms to the provisions of Sec. 2.201 of the Code relative to notice to a contract seller by a contract buyer of the fact, and terms and agreement, of a contract sufficient to enable the seller to hold as bound the party named as the purchaser. Therefore, since the purchaser is bound by the terms thereof, if the instrument be proved to have actually been sent and received by the party to whom it was mailed it constituted a binding contract if further proof shows that it is enforceable by Sec. 2.201 of the Texas Business and Commerce Code as a transaction "between merchants."

■ We hold that proof relative to handling and mailing by Union Equity in the usual course of business procedure at its office entitled the trial court, as the fact finder, to infer that there was proper mailing of a duly addressed and stamped envelope containing the same to Nelson, and that it was received by the addressee Nelson. *Southland Life Ins. Co. v. Greenwade*, 138 Tex. 450, 159 S.W.2d 854 (1942).

■ We will take occasion to mention that Nelson denied that he had ever orally agreed to make the sale to Union Equity. He admitted having called Union Equity on the date in question, but insisted that it was merely to inquire as to the price for which such a sale could be made, not to agree to

make a sale. Further, Nelson denied that he had ever received the confirmation of Union Equity, and he presents the explanation for such reason, in part, his admitted failure to object to its terms. Nelson did make certain admissions relative to his actions which cast doubt upon either his veracity or his powers of recollection. In any event we have no doubt that Nelson did actually orally agree to be bound, by fact findings made that there was written confirmation by Union Equity, and by the law recognize that Nelson was properly held bound unless he is entitled to escape liability by the statute of frauds.

Here we reach the important question of whether the court, as the fact finder, was entitled to conclude that Nelson was a "merchant" within the meaning and intent of Sec. 2.201 of the Texas Business and Commercial Code. We take note that language thereof conforms to the Uniform Commercial Code adopted by most states, in particular those to which there will be later reference.

Texas Business and Commerce Code, Sec. 2.104, "Definitions: 'Merchant'; 'Between Merchants'; 'Financing Agency'", in part provides, as follows: "(a) 'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill. (b) . . . (c) 'Between merchants' means in any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants."

Under the comments noticed under the foregoing section, and as applied to sections specified, including Sec. 2.201, we note the following: " . . . dealing with the statute of frauds, firm offers, confirmatory memoranda and modification rest on normal business practices which are or ought to be typical of and familiar to any person in business. For purposes of these sections

almost every person in business would, therefore, be deemed to be a 'merchant' under the language 'who . . . by his occupation holds himself out as having knowledge or skill peculiar to the practices . . . involved in the transaction . .' since the practices involved in the transaction are non-specialized business practices such as answering mail. In this type of provision, banks or even universities, for example, well may be 'merchants.'"

Cases relied upon by Nelson in his contention that the facts and circumstances proved in this case did not authorize the court to factually conclude that he was a "merchant" were *Cook Grains, Inc. v. Fallis*, 239 Ark. 962, 395 S.W.2d 555 (1965) and *Loeb and Company, Inc. v. Schreiner*, 294 Ala. 722, 321 So.2d 199 (1975). We observe in both cases that the trial courts had held that the defendant was not a "merchant" within the meaning and intent of the Uniform Commercial Code, and that the appellate court affirmed the trial courts.

In *Cook Grains* the court wrote: "There is not a scintilla of evidence in the record, or proffered as evidence, that appellee is a dealer in goods of the kind or by his occupation holds himself out as having knowledge or a skill peculiar to the practices of goods involved in the transaction, and no such knowledge or skill can be attributed to him." That being true as applied to the record of the evidence in such case there would be no doubt that the Arkansas trial court was correct in its judgment. The burden of proof would in that case have been upon Cook Grains, Inc. to prove that Fallis was a merchant within the meaning of the Uniform Code, and absent a discharge of the burden of proof it would not have been entitled to prevail by its suit against Fallis. Actually the holding in *Cook Grains* fails to constitute useful authority for Nelson.

In *Loeb* the defendant was a cotton farmer. He acknowledged having received the written confirmation contemplated and provided by the Uniform Commercial Code, but he disregarded it and sold his cotton crop elsewhere. That he had done so and had

failed to make delivery to plaintiff was the foundation of the suit for damages against him. The court held that the farmer, despite the fact that he might have held himself out as having knowledge or skill peculiar to the practices or goods involved, would, nevertheless, not be a "merchant" under the provisions of the code because as a farmer he did not *solely by his occupation* hold himself out as being a professional cotton merchant. Noted were the provisions of the Uniform Commercial Code that for a farmer to be included within the definition of "merchant" he must do one of the following: (1) deal in goods of the kind; (2) *by his occupation* hold himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction; or (3) employ an agent or broker or other intermediary who *by his occupation* holds himself out as having such knowledge or skill.

*Loeb* does constitute authority for Nelson in the instant case for here we likewise have a case which turns upon the propriety of holding a person whose only sales of a commodity is of a crop of a certain kind which he has become experienced in marketing and as to which he has acquired familiarity with the customs and usages of what is termed forward contracts, i. e. the dealing in sales of commodities to be the subject of delivery at a future time.

Primarily Union Equity relies upon the case of *Sierens v. Clausen*, 60 Ill.2d 585, 328 N.E.2d 559 (1975). It was a case in which the trial court held for the defendant farmer, and the plaintiff prevailed upon the appeal. As will be hereafter noticed Illinois is the state in which there has been the greater amount of experience in the determination of proper application of the law to the exact question.

In that state we have been referred to the case of *Continental Grain Company v. Harbach*, 400 F.Supp. 695 (U.S.Dist.Ct., N.D.Ill., 1975) in which a like question had been presented. In the opinion written by the Federal Trial Court we find discussion and explanation with which we are in accord. In *Harbach* the court discussed the experience of Harbach in marketing the grain sold by him, his admission of understanding of forward contracts and knowledge that they are often made by telephone, with buyers confirming them in writing, etc. Observing that there were facts in evidence which suggested that Harbach was claiming he was not a merchant in an effort to escape from a contract which hindsight proved unwise, the court continued to write, viz:

"Until very recently, the Illinois Supreme Court had not decided whether a farmer can also be a merchant under the Code. The Illinois appellate courts were split on the issue. *Sierens v. Clausen*, 21 Ill.App.3d 450, 315 N.E.2d 897 (3d Dist.1974) (farmer is not a merchant); *Campbell v. Yokel*, 20 Ill.App.3d 702, 313 N.E.2d 628 (5th Dist. 1974) (farmer is a merchant); *Oloffson v. Coomer*, 11 Ill.App.3d 918, 296 N.E.2d 871 (3d Dist.1973) (farmer is not a merchant).

. . .

"After all the briefs were filed (in the instant appeal) on the instant issue, the Illinois Supreme Court held that a farmer who sells his crops can be a merchant at the time of sale, reversing *Sierens*, supra. *Sierens v. Clausen*, 60 Ill.2d 585, 328 N.E.2d 559 (1975). In *Sierens*, the operators of a grain elevator brought an action against a farmer who allegedly breached two oral forward contracts to sell soybeans to the plaintiffs. Plaintiffs claimed that they had confirmed the oral contract in writing pursuant to the 'merchant exception' to the Code Statute of Frauds, and in accordance with the usual customs of the grain business. Plaintiffs further alleged that defendant was familiar with these customs. Defendant claimed that he was a farmer and not a merchant. The trial court held that defendant was not a merchant and dismissed the action. The appellate court affirmed, reasoning that the defendant farmer was only a 'casual seller' and was in the business of growing rather than selling grain. The Supreme Court reversed, resting on facts revealed in defendant's answers to interrogatories. These answers showed that defendant had farmed for 34 years, had cultivated over 300 acres of corn and soybeans, and had sold his crops

to grain elevators both under cash sales and futures contracts for at least five years. The court held:

" 'The practice of grain and soybean growers in selling their products in the manner described in plaintiffs' amended complaint is well known and widely followed. We know of no reason why under the circumstances shown here the defendant, admittedly a farmer, cannot at the time of the sale be a "merchant." ' 328 N.E.2d at 561. This decision commands an appraisal of defendant Harbach's circumstances to determine whether his experience and knowledge subject him to the obligations of merchants.

"At first glance, the circumstances of defendant Harbach seem remarkably similar to those of the defendant in *Sierens*. Both defendants had been farmers for many years. Both grew large amounts of corn and soybeans. Both were familiar with the customs and usages of cash sale contracts and forward contracts. Defendant, relying on the favorable opinion of the appellate court in *Sierens*, stressed the factual similarity between himself and the *Sierens* defendant farmer. (Brief for Defendant at 50).

"There is one factual difference between the two defendants which merits consideration. The *Sierens* defendant had sold the exact commodity involved in the disputed contract, soybeans, for five years. Defendant Harbach had only sold soybeans for a few months. Defendant urges that he lacked the experience in selling soybeans to be classified as a dealer in goods of the kind under the first part of the Code definition of merchant. Some decisions do suggest that length of experience may be a factor in determining whether a person deals in goods of the kind. *Campbell v. Yokel*, supra (farmer who sold for several years is a merchant); *Fear Ranches Inc. v. Berry*, 470 F.2d 905 (10th Cir. 1972) (rancher was not a merchant with respect to his first sale to a non-meat packer). Nevertheless, defendant's lack of experience in selling soybeans alone is not enough to refute his status as a merchant. One reason is that defendant

has failed to show that corn and soybeans are too different to be goods of the same kind. Both commodities are grain, and defendant is certainly a merchant as to sales of corn.

"We need not decide whether corn and soybeans are goods of the same kind because defendant is clearly a merchant under the second part of the Code definition, one who by his occupation holds himself out as having knowledge in the practice involved in the transaction. Defendant admitted he had sold large quantities of corn, as well as smaller quantities of potatoes and soybeans under forward contracts for five or six years. He admitted that he has traded on the Chicago Board of Trade and that he keeps up with market news. Nothing in any of the briefs indicates that the method of making forward contracts for corn differs in any respect from those for soybeans. These activities are surely sufficient to prove that defendant is a merchant.

"Defendant nevertheless claims that he never made an affirmative representation that he possessed skills as to selling soybeans. In view of his actual knowledge and business experience, no additional positive representation is necessary.

"Both parties debated whether anyone with general business knowledge, who can be expected to answer mail, should be a merchant for the purposes of the 'merchant exception' to the Statute of Frauds. See Uniform Commercial Code Comment to § 2–201. We need not resolve this question because defendant clearly had more than general business knowledge. He was familiar with the specific confirmation practices commonly used in oral forward contracts.

"Finally, defendant attempts to distinguish between growing soybeans and selling them. He claims that at best he was a merchant only with respect to growing soybeans. Even if it were possible to thus parse these two stages of commercial agriculture, our decision rests on defendant's familiarity with the business practices involved, and not his knowledge of selling soybeans specifically.

"For the foregoing reasons, we hold that defendant was a merchant under the Code with respect to the oral contract he allegedly made with plaintiff on February 21, 1973. . . . ."

A holding like unto that of the Illinois Supreme Court in *Sierens* was made in the case of *Ohio Grain Co. v. Swisshelm*, 40 Ohio App.2d 203, 318 N.E.2d 428 (1973), a case in which the court commented upon the evidence showing that the farmer was familiar with the marketing of his product, had attended such for a considerable period, and that he was also familiar with farm markets and their operation and followed them with some care.

Noted in the case of *Fear Ranches, Inc. v. Berry*, 470 F.2d 905 (U.S.C.A. 10th Circuit, 1972) was the importance the court attributed to the experience of the cattleman seller to the specific transaction which was the subject of the suit. In that case apparently the seller, though experienced relative to sales to packers, was inexperienced in regard to sales to non-packers. On this the court wrote at page 907, as follows: "The record shows, and the trial court found, that defendants Berry had theretofore sold all cattle they raised or fed to packers; that the sale to Perschbacker was the first sale to a non-packer, and 'was forced by financial difficulties.' Thus this sale was the dealing in a different classification of stock than this cow and calf sale for resale. This was a sufficiently different type of business and type of goods than theretofore sold. This is a sufficient difference to support the trial court's conclusion. . . . " The trial court's conclusion, referred to in the quotation, was that sellers of the cows and calves were not merchants under the Uniform Commercial Code as applied to their transaction of sale for resale.

In *Campbell v. Yokel*, 20 Ill.App.3d 702, 313 N.E.2d 628 (5th Dist., 1974) the court took occasion to discuss the ability of a knowledgeable farmer who acts as a merchant in selling his crops to practice fraud upon a purchaser to whom he had contracted to make delivery in the future if he is allowed, merely by reason of the fact that he is a farmer, to escape liability under the contract in the event a more favorable opportunity should appear while at the same time enabled to hold the purchaser to the contract exhibited by the "written confirmation."

■ Every good reason exists for holding that the fact finder should be entitled to determine the question. In most instances where an ignorant, innocent, and inexperienced farmer fails to consummate a contract of the kind under consideration he will probably be protected by the finding made. In most instances where a knowledgeable and experienced trader who happens to be a farmer fails to consummate such a contract in order to take advantage of the purchaser, to the resultant loss by the latter in good faith reliance upon the commitment, the purchaser will probably be protected by the fact finder.

■ Only in the exceptional case would circumstances remove the responsibility for factual determination from the fact finder and require the holding that the farmer was not a merchant as applied to the transaction which is subject of a suit by a purchaser who believes himself protected by the law upon mailing the written confirmation of sale and purchase agreement. That before us on appeal is not such a case. Here the responsibility was devolved upon the fact finder. The evidence was sufficient to support the fact finding against Nelson in this case and therefore the judgment must be sustained.

Judgment is affirmed.