**Carroll NELSON, Petitioner,**

v.

**UNION EQUITY CO–OPERATIVE EXCHANGE, Respondent.**

**No. B–6108.**

Supreme Court of Texas.

March 16, 1977.

Rehearing Denied April 13, 1977.

---

J. Steven King, Fort Worth, for petitioner.

Cantey, Hanger, Gooch, Cravens & Munn, S. G. Johndroe, III, Fort Worth, for respondent.

GREENHILL, Justice.

The question in this case is one of first impression. It is whether the trial court was correct in finding that the petitioner, admittedly a farmer, was also a "merchant" within the meaning of the Texas Uniform Commercial Code [hereinafter Texas U.C. C.], Texas Business & Commerce Code, Section 2.201(b).[1] The court of civil appeals upheld the trial court finding. 536 S.W.2d 635. We affirm.

Union Equity Co-operative Exchange, hereafter referred to as Union Equity, is a corporation engaged in the business of storing, merchandising, and exporting grain. It sued Carroll Nelson for damages arising from the breach of an oral wheat "forward" contract entered into by the parties on August 1, 1973. A "forward" or "futures" contract is one whereby the farmer agrees to sell his crop at a future date for a specified price. Union Equity alleged that this contract called for Nelson to deliver 5,000 bushels of wheat to the grain company by August 31, 1973. In return, he was to receive $3.56 for each bushel delivered.

1. Vernon's Texas Codes Annotated, Business & Commerce, § 2.201(b). All references herein are to the Texas U.C.C., as codified in Vernon's Texas Business & Commerce Code Annotated, unless otherwise indicated.

The grain company further alleged that Nelson had failed to perform his obligations under the contract, and that it had incurred damages in the amount of $6,500 as a result. Union Equity's damages were sustained by reason of its having to acquire 5,000 bushels of wheat on August 31 at the then-prevailing market price of $4.86 per bushel. The sharp rise in the price of wheat appears to have occurred because of large grain purchases by the Soviet Union during this period.

Nelson entered a general denial to Union Equity's allegations and pleaded the affirmative defense of the Statute of Frauds, Texas U.C.C. Section 2.201. Subsection (a) of that section states that contracts for the sale of goods with a purchase price of $500 or more may not be enforced unless the contract is in writing and signed by the person to be charged.[2] Because it was undisputed that the contract upon which Union Equity sued was not in writing, it sought to avoid the operation of section 2.201(a) by relying on Section 2.201(b). That subsection sets out an exception to the Statute of Frauds general rule. It provides:

> *Between merchants* if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of Subsection (a) against such party unless written notice of objection to its contents is given within ten days after it is received. [Emphasis added.]

The word "merchant" is defined in Section 2.104 which is set out and discussed below.

Thus, if Union Equity established the existence of the oral contract, it could enforce that contract, despite the Statute of Frauds, upon a showing that the transaction fell within Section 2.201(b); and that, in turn, depends upon whether Nelson was a "merchant" as defined by the statute.

Trial was had to the court, which found that the parties had in fact entered into an oral contract during the course of a telephone call made by Nelson to Union Equity on August 1, 1973. The terms of the contract were found to be those alleged by Union Equity in its petition, and Nelson was found to have breached the contract by failing to deliver the wheat as promised. The trial court also found as fact that Union Equity had mailed a written confirmation to Nelson on August 1, that Nelson had received the confirmation, and that he had not given written objection to any of its terms within ten days of receipt. In its conclusions of law, the trial court found that the written confirmation was sufficient against Union Equity. It further found that both Nelson and Union Equity were "merchants" as that term is used in Section 2.201(b). Accordingly, the contract was enforced against Nelson, and judgment was rendered for the grain company.

After the court of civil appeals affirmed the trial court judgment, Nelson applied to this Court for a writ of error. In his application he asserted error in the trial court's fact finding that Union Equity had mailed the written confirmation and in its conclusion of law that he was a "merchant." We granted the application in order to consider the question of whether he was a "merchant" when he entered into the oral contract with Union Equity. Since the facts are undisputed insofar as they relate to Nelson's status as a merchant, the question before us is one of law for the court to decide by applying the U.C.C. definition of "merchant" to the facts of the case. *See Decatur Cooperative Association v. Urban*, 219 Kan. 171, 547 P.2d 323 (1976); *Sierens*

---

**2.** Section 2.201(a) provides:

Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

*v. Clausen*, 60 Ill.2d 585, 328 N.E.2d 559 (1975).

The Texas U.C.C. definitions of "merchant" and "between merchants" appear in Section 2.104. Section 2.104(a) states:

"Merchant" means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

Section 2.104(c) states:

"Between merchants" means in any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants.

The facts as they relate to Nelson's occupation and as found by the trial court are undisputed. He is a lifelong Oklahoma resident and owns 1,200 acres of land near Mangum, Oklahoma. He grazes cattle on this land and has grown cotton and wheat there since at least 1967. He does not consume the crops he raises, but sells them for his livelihood. He brings in one wheat crop a year, and he has sold that crop annually since 1967.

Nelson is knowledgeable about the business of growing and selling crops, and he has made it his usual practice since 1967 to determine the best price obtainable for his crops. He stays abreast of the current market prices by listening to the market reports on the radio every day and by telephoning various grain dealers to get the current wheat price quotations. Prior to August 1, 1973, the date the oral contract the basis of this suit was made, Nelson had called Union Equity several times to inquire about wheat prices. In 1972, he had entered into a wheat forward contract with Union Equity over the telephone; but that contract was rescinded by the parties when Nelson broke his shoulder and was unable to perform his obligations. In the five years preceding the trial, Nelson had annually sold his wheat to a milling company in Denton, Texas, under

contracts that were signed by both Nelson and a milling company agent. Nelson sold his 1973 wheat crop of 5,000 bushels to that company in September of 1973 for $5.25 per bushel.

In deciding whether Nelson was a merchant under these facts, we are aware that a "merchant" is commonly understood to be a person engaged in the buying and selling of commodities for profit, or a person in the retail business. *See Webster's Third New International Dictionary* 1413 (1969). Although other courts have referred to the ordinary meaning of "merchant" in applying the U.C.C., *Lish v. Compton*, 547 P.2d 223 (Utah 1976); *Cook Grains, Inc. v. Fallis*, 239 Ark. 962, 395 S.W.2d 555 (1965), we are not here dealing with the dictionary definition of "merchant." That term is expressly defined in Texas U.C.C. Section 2.104(a), and we are bound to apply the statutory definition in deciding the question before us. Under that definition, a person is a "merchant" if he (1) deals in goods of the kind, or (2) by his occupation holds himself out as having knowledge or skill peculiar to the *practices* involved in the transaction, or (3) by his occupation holds himself out as having knowledge or skill peculiar to the *goods* involved in the transaction, or (4) employs an intermediary who by his occupation holds himself out as having such knowledge or skill, and that knowledge or skill may be attributed to the person whose status is in question. If the facts show that a person satisfies any of the above criteria, then we are bound to hold that person to be a merchant.

The facts show that Nelson satisfied the first criterion above because he did deal in goods of the kind; he dealt in wheat. The Texas U.C.C. does not define the term "deal," the ordinary meaning of which is "to traffic; to transact business," *Black's Law Dictionary* 487 (4th ed. 1968) or "to buy or to sell," *Ballentine's Law Dictionary* 308 (3d ed. 1969). The subject matter of Nelson's contract with Union Equity was wheat. He raised his own wheat and brought in one crop a year. He annually sold that crop himself; and in the five years

preceding the trial of this case, his sales were to a milling company. Under the plain meaning of the term "deal," Nelson dealt in wheat. He was therefore one who "deals in goods of the kind . . .," and he was a "merchant" under the U.C.C. definition. *See Campbell v. Yokel*, 20 Ill. App.3d 702, 313 N.E.2d 628 (1974). *Contra, Loeb & Co. v. Schreiner*, 294 Ala. 722, 321 So.2d 199 (1975).

The facts in this case also show that Nelson satisfied the second and third criteria of the statutory definition. It should be noted that those criteria do not require that a person *actually hold himself out* as having some particular knowledge or skill; they require that a person *by his occupation* hold himself out as having that knowledge or skill. Thus, an inquiry into a person's merchant status under the second and third statutory criteria should focus on that person's *occupation*, and not on whether he made any representations or on his actual knowledge or skill.

Nelson argues that his occupation is that of a farmer, and farmers do not by their occupations represent themselves as having knowledge or skill peculiar to their crops or to practices involved in their sales. We disagree. First of all, an experienced farmer such as Nelson did, by his occupation as a farmer, hold himself out as having knowledge or skill concerning *the goods* which were the subject of the oral contract. We believe that a reasonable person could expect an experienced wheat farmer to know the various grades and qualities of wheat, the yield of his farmland under varying conditions, and other factors that are peculiar to the business of wheat farming and to the wheat itself. Nelson therefore satisfied the third criterion above.

Furthermore, he satisfied the second criterion also. Nelson's occupation was not only that of raising wheat and other crops; he sold the wheat which he raised, and to that end he stayed informed as to market prices and was knowledgeable in the business of selling. Nelson's occupation was clearly that of raising *and selling* wheat for his living. A person whose occupation includes the selling of a commodity, at least to the extent shown of Nelson, necessarily represents to those persons with whom he transacts business that he has knowledge of the practices and goods involved in the business transaction.

It should also be noted that the Official Comment to Section 2.104 states what kinds of "practices" were envisioned when the Section was drafted. The Comment states in part:

Sections 2—201(2), 2—205, 2—207 and 2—209 dealing with the statute of frauds, firm offers, confirmatory memoranda and modification rest on normal business practices which are or ought to be typical of and familiar to any person in business. *For purposes of these sections almost every person in business would, therefore, be deemed to be a "merchant"* under the language "who . . . by his occupation holds himself out as having knowledge or skill peculiar to the practices . . . involved in the transaction . . ." *since the practices involved in the transaction are non-specialized business practices such as answering mail.* In this type of provision, banks or even universities, for example, well may be "merchants." But even these sections only apply to a merchant in his mercantile capacity; a lawyer or bank president buying fishing tackle for his own use is not a merchant. [Emphasis added].

Nelson, through his occupation of farming *and selling* wheat, held himself out as having knowledge of "non-specialized business practices such as answering mail." We therefore hold that he was a "merchant" within the meaning of Section 2.104(a) when he entered into the oral contract with Union Equity. *See Continental Grain Co. v. Brown*, F.Supp., 19 U.C.C.Rptr. 52 (W.D. Wis.1976); *Continental Grain Co. v. Harbach*, 400 F.Supp. 695 (N.D.Ill.1975); *Sierens v. Clausen*, 60 Ill.2d 585, 328 N.E.2d 559 (1975); *Ohio Grain Co. v. Swisshelm*, 40 Ohio App.2d 203, 318 N.E.2d 428 (1973).

Nelson also argues that he was not a "merchant" based upon other language in the Official Comment to the statutory defi-

nition. The Comment states in relevant part:

Purposes:

1. This article assumes that transactions between professionals in a given field require special and clear rules which may not apply to a casual or inexperienced seller or buyer. It thus adopts a policy of expressly stating rules applicable "between merchants" and "as against a merchant", wherever they are needed instead of making them depend upon the circumstances of each case . . . ..
This section lays the foundation of this policy by defining those who are to be regarded as professionals or "merchants" and by stating when a transaction is deemed to be "between merchants."

2. The term "merchant" as defined here roots in the "law merchant" concept of a professional in business. The professional status under the definition may be based upon specialized knowledge as to the goods, specialized knowledge as to business practices, or specialized knowledge as to both and which kind of specialized knowledge may be sufficient to establish the merchant status is indicated by the nature of the provisions.

\* \* \* \* \* \*

Nelson points out that the Comment indicates that the term "merchant" was intended to apply to the "professional in business," and not to the "casual or inexperienced seller or buyer." He argues that a farmer such as himself, who only sells his crop once a year and stays informed as to current market prices, is not a "professional" and is therefore not a "merchant." Courts from other jurisdictions have adopted this reasoning in holding the farmers before them not to be merchants. *Decatur Cooperative Association v. Urban*, 219 Kan. 171, 547 P.2d 323 (1976), for example, held that the farmer, who had farmed for twenty years and had annually sold his crops to others in the seven years preceding the oral contract, was not a "merchant." The court equated professionalism with a merchant's status, and stated that the concept of professionalism was to be given much weight

in determining whether a particular person was a merchant. It held that the farmer's knowledge and skill regarding the raising of wheat, plus his previous annual cash sales to local grain elevators, were not sufficient factors to justify holding the farmer to be a merchant. The court in *Loeb & Co. v. Schreiner*, 294 Ala. 722, 321 So.2d 199 (1975) also considered a farmer's "professionalism" important. The farmer in that case had farmed for approximately ten years and had sold his cotton crops to the plaintiff cotton merchant annually for the five years preceding the oral contract. The court held that the farmer's previous annual sales were not sufficient to remove him from the "casual seller" category into that of the "professional." *See also Lish v. Compton*, 547 P.2d 223 (Utah 1976); *Cook Grains, Inc. v. Fallis*, 239 Ark. 962, 395 S.W.2d 555 (1965). *Contra, Sierens v. Clausen*, 60 Ill.2d 585, 328 N.E.2d 559 (1975); *Campbell v. Yokel*, 20 Ill.App.3d 702, 313 N.E.2d 628 (1974).

We cannot accept Nelson's argument. Even if the terms "merchant" and "professional" are synonymous, we are still constrained to hold Nelson to be a merchant because under the facts before us, he was a professional, and not a "casual or inexperienced seller." He was a professional in the business of growing and selling the crops he raised. *See Campbell v. Yokel, supra.* He did not sell his wheat as a hobby or merely for pleasure; his livelihood depended on the expertise with which he sold, as well as raised, his crops. He was a professional and, therefore, a "merchant."

■ It may be argued that we have undertaken an unduly literal application of the statutory definition to the facts of this case. There are, however, persuasive reasons for adopting an expansive reading of the "merchant" definition. First, the broad language of Section 2.104(a) and the accompanying text of the Official Comment suggest that the term "merchant" was intended to apply to all but the most casual or inexperienced sellers. Second, the burden on the "merchant" seller of grain is light; all he must do is read his mail and object

within ten days to the contents of the confirmatory memorandum. On the other hand, it would be a far greater burden on merchant buyers of grain to require them to execute forward sales with farmers such as Nelson by using methods other than confirmatory memoranda. *See Allenberg Cotton Co. v. Pittman,* 419 U.S. 20, 26–29, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974) for a discussion of the widespread use of forward contracts in the commodities market and the reasons for their use. Finally, we believe that it is reasonable for a grain dealer to treat a seller as a merchant when that seller has offered to sell a large quantity of grain of specified quality, at a specified price, for delivery at a specified future time. *Continental Grain Co. v. Brown,* F.Supp., 19 U.C.C.Rptr. 52, 59–60 (W.D.Wis. 1976).

For the above reasons, we hold that Nelson was a "merchant" when he entered into the oral contract with Union Equity. The judgment of the court of civil appeals is affirmed.

Dissenting opinion by Justice SAM D. JOHNSON in which Justices STEAKLEY, McGEE and YARBROUGH join.

SAM D. JOHNSON, Justice, dissenting.

This dissent is respectfully submitted.

Carroll Nelson, the defendant farmer, grows two cash crops, cotton and wheat, on his 1,200-acre farm near Mangum, Oklahoma. Union Equity Co-Operative Exchange sued Nelson alleging an oral contract for the sale of his yearly wheat crop. By the terms of this alleged oral contract, Nelson sold his 1973 wheat crop, estimated at 5,000 bushels, for a total sum of $17,800 and obligated himself to deliver it by August 31, 1973. Since there is no written instrument signed by Nelson, and since the sale price exceeded $500, recovery upon such an oral contract would usually be barred by the statute of frauds [Section 2.201(a), Texas Business and Commerce Code Annotated].

Union Exchange, however, asserts it is entitled to enforce this oral contract because of an exception to the statute of frauds contained in Section 2.201(b). Section 2.201(b) allows an oral contract between "merchants" to be enforced "if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, . . . unless written notice of objection to its contents is given within ten days after it is received." The majority of this court holds that Nelson, a farmer, is a "merchant." It is that holding with which this writer vigorously disagrees.

The facts on which the majority relies for its determination are contained in its ninth and tenth paragraphs. These facts are:

Nelson is a resident of Oklahoma and owns 1,200 acres of land.

He grazes cattle and has grown cotton and wheat there since 1967.

He has one wheat crop a year which he has sold annually since 1967.

He is knowledgeable about growing and selling crops—he has made it his usual practice to determine the best price obtainable for them.

He stays abreast of the current market by listening to the market reports on the radio and by asking grain dealers for market prices.

Prior to the date of the alleged oral contract, he phoned Union Exchange several times to inquire about prices.

He entered into a contract in 1972 with Union Exchange, which was rescinded by the parties.

In the previous five years he sold his wheat to a milling company (not the plaintiff in issue) by *written* contracts signed by both parties.

He sold his 1973 wheat crop to the same milling company (again, not the plaintiff in issue) for $5.25 per bushel.

These are the facts, and all the facts, on which the majority relies.

A "merchant" is defined in *Webster's New International Dictionary* (Second Edition) as "any one making a business of buying and selling commodities; a trafficker; a trader; . . . one who traffics on

a large scale, esp[ecially] with foreign countries. One who carries on a retail business; a storekeeper or shopkeeper."

From the facts recited by the majority, it is unreasonable to conclude that Nelson, a farmer, was a "merchant." The majority opinion violates the clear, ordinary meaning of that word as well as the definition contained in Section 2.104(a). That Section states:

> " 'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill."

The intent of this Section is violated when a farmer, or any other individual who is a casual seller or buyer, is held to be a "merchant." This intent is made obvious by the first comment to Section 2.104(a), which provides:

> "This Article assumes that transactions *between professionals in a given field* require special and clear rules which may not apply to a *casual* or inexperienced seller or buyer." [Emphasis added.]

In the instant case the evidence shows that Nelson, the farmer and producer of wheat, sold such wheat only one time per year. There is no indication that this farmer was a "professional" in the field of merchandising wheat or anything else; the evidence does no more than indicate a casual sale, a sale of wheat one time per year.

The majority holding that this farmer is a "merchant" not only violates the spirit of the law of Section 2.104(a), but also the letter of that law. Under the definition of Section 2.104(a), a person is a "merchant" if he (1) deals in goods of the kind involved in the transaction; (2) by his occupation holds himself out as having knowledge or skill peculiar to the practices involved in the transaction; (3) by his occupation holds himself out as having knowledge or skill peculiar to the goods involved in the trans-

action; or (4) employs an intermediary who, by his occupation, holds himself out as having such knowledge or skill.

This evidence is legally insufficient to establish that Nelson satisfied the first statutory criterion of being one who deals in goods of the kind involved in the transaction. As stated previously, the comment to Section 2.104(a) makes it clear that a "merchant" is a professional in business and does not include a casual seller or buyer. It is inconceivable that farmers who generally sell by written contract a single crop each year to one buyer are professionals in business and therefore "merchants." Under such determination, every farmer in the state, of course, would be a "merchant." Using the majority's own definition, it is indisputable that Nelson did not "deal" in wheat. He *produced* wheat and he *sold* wheat, but he did not traffic, buy and sell, or transact business in it. One sale a year of a commodity *produced* is less than a scintilla of evidence that the farmer "deals" in farm crops. Other courts have so held. *Loeb and Company, Inc. v. Schreiner*, 294 Ala. 722, 321 So.2d 199 (1975); *Cook Grains, Inc. v. Fallis*, 239 Ark. 962, 395 S.W.2d 555 (1965); *Decatur Cooperative Association v. Urban*, 219 Kan. 171, 547 P.2d 323 (1976); and *Lish v. Compton*, 547 P.2d 223 (Utah 1976).

Nor does Nelson satisfy the second criterion. His occupation as a farmer who owns land, grazes cattle, and sells one crop a year by written contract is legally insufficient to indicate that he has knowledge or skill peculiar to the practices involved in the transaction. There is no justification on the basis of the evidence in this case to conclude that Nelson's occupation indicates any knowledge of the professional business practice of allowing a letter signed by only one party to create a binding contract if the recipient of the letter does nothing. The statute correctly attributes such knowledge to *merchants* ; there is no indication that it was ever intended to attribute such knowledge to *farmers*.

The third criterion of Section 2.104(a), that the individual's occupation indicates

**360**

knowledge or skill peculiar to the goods involved, is not applicable to this fact situation involving an exception to the defense of the statute of frauds [Section 2.201(b)]. The term "merchant" is employed in at least thirteen significant provisions of the Texas Business and Commerce Code.[1] Accordingly, the definition of "merchant" must be a broad one and every criterion of this broad definition may not always apply to a given provision. This view is supported by the following comment to Section 2.104(a):

> "2. The term 'merchant' as defined here roots in the 'law merchant' concept of a professional in business. The professional status under the definition may be based upon specialized knowledge as to the goods, specialized knowledge as to business practices, or specialized knowledge as to both and *which kind of specialized knowledge may be sufficient to establish the merchant status is indicated by the nature of the provisions.*" [Emphasis added.]

The provision involved in this suit, Section 2.201(b), contemplates an awareness of the professional business practice of employing a confirming memorandum signed only by one party to create a binding contract, notwithstanding the statute of frauds. While the act of dealing in goods or one's occupation may indicate awareness of such a practice, knowledge or skill peculiar to the goods cannot.

It is undisputed even by the majority that the fourth criterion of Section 2.104(a) is not satisfied.

Clearly, a literal application of the statute does not support the view of the majority. Further, the weighing of the burden on the farmer to object to every letter he receives against the burden on the buyer to await the return of a signed contract does not provide persuasive support for the majority view. Although *Allenberg Cotton Co., Inc. v. Pittman*, 419 U.S. 20, 26–29, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974), discusses

the virtues of forward contracts, that case involved a written agreement signed by both parties and the opinion does not consider the issue of the respective burdens of the parties regarding the creation of forward contracts.

Finally, it is unreasonable for a professional grain dealer, experienced in the commodity market, to assume that a farmer who sells a single crop of wheat a year has knowledge of the professional business practice of employing a memorandum signed only by one party to create a binding agreement.

The unfortunate result of the majority decision is not only that every farmer in Texas is held to be a "merchant," but every individual who from time to time buys or sells significant household or personal items, house trailers, boats, or automobiles also becomes a "merchant." Each of these persons would be a "merchant" and would be bound by a confirming letter sent by a buyer or seller if the person did not object to it.

Justices STEAKLEY, McGEE, and YARBROUGH join in this dissent.

---

1. Sections 2.103, 2.201, 2.205, 2.207(b), 2.209(b), 2.314, 2.327, 2.402(b), 2.403, 2.509(c), 2.603, 2.605(a)(2), and 2.609(b).