Lloyd E. LISH, Jr., Plaintiff
and Respondent,

v.

Dean COMPTON, Defendant and Appellant.

No. 14111.

Supreme Court of Utah.

March 11, 1976.

Omer J. Call, Brigham City, for defendant and appellant.

J. Anthony Eyre, Kipp & Christian, Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Grain broker Lloyd Lish sued Dean Compton alleging breach of a verbal contract to sell plaintiff his 1973 wheat crop, expected to be about 15,000 bushels, from defendant's farm at Sublett, Idaho. The defense asserted was that there was no valid agreement ever entered into because the amount was over $500 and there was no contract in writing as required by statute.[1]

A jury answered interrogatories favorable to the plaintiff's contentions. The court entered judgment in accordance therewith and assessed damages of $13,150. Defendant attacks the finding that there was a binding contract, and also contends that even if liability did exist, the computation of damage was excessive.

On August 2, 1973, the plaintiff Lish telephoned the defendant Compton and talked about the purchase of the latter's wheat crop soon to be harvested. The price discussed, and which plaintiff claims was agreed upon, was $3.30 per bushel for about 15,000 bushels. Plaintiff asserts that he made a notation of this agreement in his notebook of that day; and that he committed this same 15,000 bushels of wheat to the Pillsbury Mills at Ogden for $3.45 per bushel, to be delivered upon the harvesting of the wheat. In view of the rule of review which requires us to survey the evidence in the light favorable to the jury's finding, we take the following critical facts as stated in the plaintiff's own brief:

"On August 3, 1973, the plaintiff entered in his notebook written notation of the purchase thus: 'red wheat, rye mix . . . 15,000 bushels, $3.30 per bushel, as is.' This confirmation was mailed by the plaintiff

1. Sec. 70A–2–201, U.C.A.1953.

to the defendant on or about August 14, 1973, and was received by the defendant in the mails in the afternoon of August 15, 1973."

The statute upon which the controversy in this case devolves is Section 70A–2–201:

*Formal requirements—Statute of frauds.*—(1) Except as otherwise provided in this section *a contract for the sale of goods for the price of $500 or more is not enforceable* by way of action or defense *unless there is some writing* sufficient to indicate that a contract for sale has been made between the parties and *signed by the party against whom enforcement is sought* . . ..

The plaintiff of course concedes that the contract was for over $500 and that therefore, under the statute, would normally be required to be in writing. His contention is that the transaction comes within the exception of subsection (2) of that statute:

*Between merchants if within a reasonable time a writing in confirmation of the contract* and sufficient against the sender *is received* and the party receiving it has reason to know its contents, *it satisfies the requirements* of subsection (1) against such party *unless written notice of objection to its contents is given within ten days* after it is received.

The defendant's principal argument as to the unsoundness of the judgment is that there is no justification for finding that he was acting as a "merchant" in the transaction. In directing attention to that issue, it is pertinent to observe that the plaintiff, who is regularly engaged in the buying and selling of grain, fits very well into the commonly understood meaning of that term. The problem is as to the defendant. Either on his own, or with his father, he has been a hay and grain farmer for 25 years. He has not and does not buy and sell from or for anyone, other than what is produced on his own farm. Nor does he maintain a roadside stand or otherwise

continuously offer his produce to the public for sale. But the defendant does keep conversant with market prices and each year negotiates and contracts to sell his crops to his best advantage. Upon these facts the trial court submitted to the jury the question as to whether the defendant was acting as a "merchant" in the transaction, to which they answered "Yes."

In regard to the submission of that question to the jury, this is to be said: It is the prerogative and the duty of a jury to resolve issues of fact. But it is the prerogative and duty of the trial court to determine questions of law. There was no dispute as to the facts relating to whether the defendant was a "merchant." Therefore that issue was one of law for the court to rule upon.

In order to ascertain the meaning and application of the statute it is proper to look to its background and purpose. This appears to be that transactions of comparatively substantial and serious nature should be in writing. But there is carved out of that generality the exception as between "merchants." The reason for this is that merchants are of necessity engaged in numerous transactions, so it is desirable that they can be handled in an expeditious manner. Accordingly, the exception in subsection (2) of the statute provides for a procedure, as between merchants, whereby an oral contract may ripen into a binding contract if one party gives the other a written confirmation within a reasonable time, to which the recipient has ten days in which to give written notice of objection.

The fact that defendant kept conversant with the current price of wheat and planned to market it to his advantage does not necessarily make him a "merchant." It is but natural for anyone who desires to sell anything he owns to negotiate and get the best price obtainable. If this would make one a "merchant," then practically anyone who sold anything would be deemed a merchant, hence would be an exception under the statute and the need for a con-

tract in writing could be eliminated in most any kind of a sale.[2]

We think the meaning of the term "merchant" as used in the statute under consideration refers primarily to one whose occupation is that of buying and selling.[3] However, we would not exclude therefrom one who sells products he makes or raises, or otherwise acquires, if that is done with such regularity that it forms at least a substantial part of his occupation. But we think it is neither consistent with the intent and purpose of the statute, nor with the ordinarily understood meaning of its language, to apply it to anyone such as this defendant who simply sells his crops annually. Consequent to what we have said, it is our opinion that the trial court should have ruled as a matter of law that under the circumstances shown here the defendant was not a "merchant" within the meaning of the statute.

Plaintiff also relies upon the subsection (3)(b) of the statute which provides that even though the contract is not in writing it is enforceable *"if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made . . ."* It is true, as plaintiff asserts, that the defendant acknowledged the conversation concerning the purchase of his grain; and further stated that *if* he had received confirmation within a reasonable time he would have considered himself bound thereby. But just as the plaintiff relies on the statute to impose liability upon defendant, the latter is also entitled to its protections.

The provision in the statute that if a party "admits . . . in court that a contract for sale was made . . ." simply recognizes the obvious, that if he acknowledges a valid and binding contract, he should be bound thereby. But fairness requires that the defendant's position be ascertained from the total posture of his defense, rather than by taking a hypothetical statement from his testimony and treating it as a statement of fact. The fact appears to be that neither in his pleading nor otherwise did the defendant acknowledge that there was a valid and binding contract. His averments and his assertions were to the contrary, and that dispute is what this lawsuit is about.

In view of the condition stated by the defendant: that *if* he had received confirmation within a reasonable time, he would have considered himself bound, it becomes appropriate to further examine the defendant's position. Even if it be assumed that the defendant was a "merchant" under the terms of the statute, he was entitled to a notice of confirmation within a reasonable time; and he would then have ten days in which to object thereto.

Defendant argues that the trial court erred in submitting to the jury the question whether the plaintiff gave notice of confirmation of the purchase of defendant's grain within a reasonable time; and asserts that the court should have ruled otherwise as a matter of law.

In regard to that contention these observations are pertinent: The meaning of the phrase "within a reasonable time" is necessarily somewhat flexible, depending upon the particular circumstances;[4] and thus is usually a question of fact. But it is also true that, just as with all questions

---

2. See *Cook Grains, Inc. v. Fallis*, 239 Ark. 962, 395 S.W.2d 555 (1965). Plaintiff cites and relies on *Campbell v. Yokel*, 20 Ill.App.3d 702, 313 N.E.2d 628 (1974), wherein the court opined that "farmers who regularly market their crops are . . . 'merchants'." We think this depends on the particular circumstances.

3. The basic dictionary definition of the term "merchant" is: "A person whose occupation is the wholesale purchase and the retail sale of goods for profit." See, American Heritage Dictionary.

4. Sec. 70A–1–204(2), U.C.A.1953, provides: "(2) What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action. . . ." And see *Azevedo v. Minister*, 86 Nev. 576, 471 P.2d 661 (1970).

of fact, if the elapsed time was outside the ambit which fair-minded persons could conclude to be reasonable, then the issue should be ruled upon as a matter of law.

Returning to the facts here: It is undisputed that both parties knew that there was a fluctuating market; and that 12 days elapsed before any indication of confirmation was given to defendant. It seems banal to state, but it is a vital fact: that prices may rise or fall. Everyone concerned knows what happened yesterday; no one knows for sure what will happen tomorrow. The fact is that the market continued to rise and increased a total of about one dollar a bushel during the two-week period. It is suggested that where such an oral agreement had been made, defendant would be in a position to speculate by waiting to see if the price went down and then affirming and demanding performance at the higher price, or by repudiating if the price went up. But this is equally true in reverse for the plaintiff.

Having a bearing on whether plaintiff gave notice within a reasonable time are certain other facts. It was shown from plaintiff's own records that the notation of this transaction, which he dated August 3, was out of sequence with other transactions in his notebook; and that if it had been in proper sequence it would have been dated August 13 or 14. Further significant and immutable facts are these: that there ought to be some better reason than that given by the plaintiff, of mere casual delay, for his failure to give the notice for 12 days. During that time the defendant did not have the proverbial "scratch of the pen" to bind the plaintiff if the price had fallen. It seems but natural to wonder, if the price had fallen a dollar a bushel, instead of rising that much, would plaintiff have been so anxious to confirm the claimed notation of August 3, and to insist upon paying the defendant the extra dollar per bushel on 15,000 bushels of wheat.

Under the undisputed facts as just stated it is our opinion that it could not fairly and reasonably be concluded that the plaintiff gave notice of confirmation within a reasonable time; and that it therefore should be so ruled as a matter of law. What we have said herein impels the conclusion that the plaintiff failed in his burden of establishing a contract upon which he can recover. Our disposition of this case upon the issues as above discussed renders it unnecessary to deal with other matters of controversy, including the amount of damages awarded. (All emphasis added.)

The judgment is reversed. Costs to defendant (respondent).

ELLETT, J., concurs.

TUCKETT and MAUGHAN, JJ., concur in the result.

HENRIOD, Chief Justice (concurring in the result):

I concur in the result in this particular case, but depart somewhat from the possibly troublesome controversy that may arise to the effect that the statute's language would exclude the defendant here because he "simply *sells* his crops annually,"—but also does not buy anything like them or anything else as customarily.

It would appear to be common knowledge that corporate interests increasingly have taken over the dirt farmer; that they "sell" their products annually without buying similar commodities.

The generalization of the main opinion, under its formula, hardly would be justified in excluding such "merchants" as "merchants" under the statute.