KIMBALL COUNTY GRAIN COOPERATIVE, APPELLANT, V.
EARL YUNG, APPELLEE.

263 N. W. 2d 818

Filed March 8, 1978. No. 41330.

Fred J. Hurlbut, for appellant.

O'Brien & Huenergardt, for appellee.

Richard P. Nelson and William J. Morris, for amicus curiae.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BRODKEY, J.

Kimball County Grain Cooperative, plaintiff and appellant herein, brought this action against Earl Yung to recover damages for the breach of an oral contract to sell wheat. Plaintiff alleged that on July 26, 1973, the defendant orally agreed to sell it 15,000 bushels of wheat at the price of $3.10 per bushel for future delivery; that a written confirmation of the oral contract had been delivered to the defendant, who did not object thereto within 10 days; and that the defendant had breached the contract by failing to deliver the wheat on or before January 31, 1974. Plaintiff prayed for damages of the difference between the contract price and fair market price of 15,000 bushels of wheat on the date of the alleged breach. Defendant entered a general denial to the allegations of the plaintiff, and also raised the statute of frauds as a defense. Trial was had to the District Court for Kimball County, sitting without a jury.

The District Court found that the parties had entered into an oral contract as alleged by the plaintiff, but concluded that it was not enforceable under the statute of frauds applicable to sales of goods, under section 2-201, U. C. C. The findings of the trial court in support of this conclusion were that (1) the defendant had not signed any writing sufficient to indicate that a contract for sale had been made between the parties; (2) the defendant was not a "merchant" as defined in section 2-104, U. C. C., and therefore the "merchant exception" to the statute of frauds, subsection (2) of section 2-201, U. C. C., did not apply; and (3) even if defendant was a "merchant," the oral contract was not enforceable under subsection (2) of section 2-201, U. C. C., because the defendant had not received a written confirmation of the oral contract "within a reasonable time." The District Court dismissed plaintiff's petition. Plaintiff has appealed, contending that the trial court

erred in holding that the oral contract was not enforceable under the statute of frauds. We affirm the judgment of the District Court.

Plaintiff, a grain cooperative, is in the business of buying grain from farmers and selling it to terminal grain elevators. Approximately 80 percent of its purchases from farmers are made under oral contracts. The farmer usually telephones the plaintiff and inquires about price, and then agrees to sell a specified amount of grain at the quoted price. It has been plaintiff's practice to draft a written contract shortly after the oral agreement is made with the farmer, and hold it for signature. The farmer then signs the written contract the next time he comes to plaintiff's elevator. The plaintiff has had no practice of mailing or otherwise delivering written confirmations of oral agreements to farmers, but relies on them to come to the elevator and sign the written contract.

On July 26, 1973, the defendant telephoned the plaintiff and orally agreed to sell it 15,000 bushels of wheat at the price of $3.10 per bushel for delivery in January 1974. In accordance with its practice, the plaintiff drafted a written contract and held it for defendant's signature, but the defendant did not go to the plaintiff's elevator and sign that contract. Although the plaintiff attempted, unsuccessfully, to telephone the defendant several times between September 1973, and January 1974, and remind him of the contract, the plaintiff made no attempt to deliver the written contract or any other writing to the defendant during that period of time. On January 30, 1974, plaintiff's general manager did deliver the written contract to the defendant. The defendant neither signed it, nor did he object to its contents in writing within 10 days after he received it. The defendant ignored plaintiff's subsequent requests to deliver the wheat, and never did deliver any amount

of wheat to the plaintiff under the oral agreement of July 26, 1973.

Subsection (1) of section 2-201, U. C. C., provides that a "contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker." This provision applies to the contract in the present case because crops are included within the definition of "goods" in section 2-105, U. C. C., and the contract price exceeded $500.

Subsection (2) of section 2-201, U. C. C., which establishes an exception or modification to the rule set forth in subsection (1), provides: "Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received." The parties agree that unless the provisions of subsection (2) apply in this case, the oral contract in question is unenforceable under subsection (1). Under the facts of this case, subsection (2) can only apply if the defendant was a "merchant" when he entered into the oral contract, and if the written contract was received by the defendant "within a reasonable time."

The question of whether a farmer who sells his crop is a "merchant" as defined in section 2-104, U. C. C., has not been decided in this state. Courts in other jurisdictions are sharply divided on the issue. Cf. Sand Seed Service, Inc. v. Poeckes, 249 N. W. 2d 663 (Iowa, 1977); Decatur Cooperative Assn. v. Urban, 219 Kan. 171, 547 P. 2d 323 (1976); Lish v. Compton, 547 P. 2d 223 (Utah, 1976), with Nelson v. Union Equity Co-op. Exchange, 548 S. W. 2d 352 (Tex.,

1977); Sierens v. Clausen, 60 Ill. 2d 585, 328 N. E. 2d 559 (1975); Rush Johnson Farms, Inc. v. Missouri Farmers Assn., Inc., 555 S. W. 2d 61 (Mo. App., 1977). We need not resolve that issue in the present case, however, because even assuming, without deciding, that the defendant was a "merchant," the oral contract is unenforceable under the statute of frauds.

Subsection (2) of section 2-201, U. C. C., requires that a writing in confirmation of an oral contract be received "within a reasonable time." In the present case the oral contract was made on July 26, 1973. The defendant received no writing in confirmation thereof until January 30, 1974, more than 6 months after the oral contract was made, and only 1 day before the last possible delivery date under the oral contract.

Section 1-204, U. C. C., provides: "What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action." In Lish v. Compton, *supra*, the court held that a delay of 12 days between the oral contract and the receipt of a written confirmation was unreasonable. The court found no excuse for the buyer waiting 12 days before sending to a farmer a written confirmation of an oral contract for the sale of grain when the market price of the grain involved was constantly rising. In Cargill, Inc. v. Stafford, 553 F. 2d 1222 (10th Cir., 1977), a delay of approximately 1 month was held unreasonable.

There can be no doubt that the defendant in this case did not receive a writing in confirmation of the oral contract within a reasonable time. The plaintiff made no pretense of complying with subsection (2) of section 2-201, U. C. C., as its manager stated that it had no policy of sending written confirmations of oral contracts to farmers, but instead relied on the farmers to come to plaintiff's elevator and sign a contract. The delay, for which there was no adequate excuse, was more than 6 months, and the

written contract was delivered to the defendant only 1 day before the final possible date of delivery under the oral contract. The purpose of subsection (2) of section 2-201, U. C. C., was to put professional buyers and sellers on an equal footing by changing former law under which a party who received a written confirmation of an oral agreement of sale, but who himself had not signed anything, could hold the other party to the contract without himself being bound. See, 1 Hawkland, A Transactional Guide to the Uniform Commercial Code, § 1.1201, pp. 25 to 27 (1964); White & Summers, Uniform Commercial Code, § 2-3, pp. 47, 48 (1972). In view of the nature and purpose of this statutory provision and under the particular facts of this case, it cannot be said that the defendant received the written contract within a reasonable time. Therefore subsection (2) of section 2-201, U. C. C., is not applicable, and the oral contract is unenforceable under subsection (1).

The parties have raised other issues on appeal, including the sufficiency of proof with respect to damages. In view of our conclusion that the oral contract is not enforceable, we need not reach these issues. The judgment of the District Court is affirmed.

AFFIRMED.

BRODKEY, J., concurring.

Although authoring the majority opinion in this case, I do not believe it goes far enough, and I believe that this court should squarely face and resolve the question of whether the defendant was a "merchant" as defined in section 2-104, U. C. C. Logically, the question of whether the defendant was a "merchant" should be resolved before this court determines whether there has been compliance with other requirements in subsection (2) of section 2-201, U. C. C. More significantly, an important question of law has been left undecided, despite the fact that the question was properly raised, decided by the

trial court, and thoroughly briefed on appeal. In view of the controversy over this issue in other jurisdictions, this court should resolve the issue so that farmers and grain elevators know what is required with respect to contracts for the sale of grain in this state.

I believe that the defendant was acting as a "merchant" as defined in the code when he entered into the oral contract. Section 2-104, U. C. C., defines "merchant" as follows: " 'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill." Under the facts of this case, the question is whether the defendant is either a person who "deals" in wheat, or is one who by his occupation as a wheat farmer holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction of selling wheat to a grain cooperative.

The question of whether a farmer who sells his crops is a merchant under the Uniform Commercial Code is one of first impression in this state, and courts in other jurisdictions are sharply divided on the issue. In five cases it has been held that a farmer who does nothing more than sell his crop annually is not a "merchant" with respect to annual sales. See, Sand Seed Service, Inc. v. Poeckes, 249 N. W. 2d 663 (Iowa, 1977); Decatur Cooperative Assn. v. Urban, 219 Kan. 171, 547 P. 2d 323 (1976); Lish v. Compton, 547 P. 2d 223 (Utah, 1976); Loeb & Co., Inc. v. Schreiner, 294 Ala. 722, 321 So. 2d 199 (1975); Cook Grains, Inc. v. Fallis, 239 Ark. 962, 395 S. W. 2d 555 (1965). The common element of these cases is that in each the courts relied on the Com-

ment, part 1, to section 2-104 of the code, in which it is stated that the provisions in Article 2 concerning merchants were intended to apply to "professionals" and not to a "casual or inexperienced seller or buyer." The courts in each case concluded, often summarily, that a farmer who only sells his crop annually is not a "professional" with respect to such sales, but is merely a "casual seller." Courts have reached the conclusion that a farmer is only a casual seller even in cases where the farmer in question had been in the business of growing and selling wheat for so long as 20 years, and was conversant with the grain market, grain prices, and the customary practices involved in selling grain to elevators. See, Decatur Cooperative Assn. v. Urban, *supra*; Lish v. Compton, *supra*.

In these cases the courts also emphasized the fact that the farmers in question sold only their own produce, and did not buy products from other persons and resell them. In stating that the term merchant refers primarily to one whose occupation is that of buying and selling, courts relied in part on dictionary definitions in which "merchant" is defined as one engaged in the purchase and sale of goods, or as a "trafficker" or "trader." See, Lish v. Compton, *supra*; Sand Seed Service, Inc. v. Poeckes, *supra*. In Cook Grains, Inc. v. Fallis, *supra*, the court referred to Words and Phrases and precode cases in an attempt to define the words "farmer" and "merchant," and concluded that a farmer was not a merchant in view of the "plain and ordinary meaning" of those two words. The need to resort to dictionaries or precode cases when the term "merchant" is defined in section 2-104 of the code is not explained in these decisions.

A final reason given for holding that a farmer is not a merchant is that the framers of the code did not so intend, or that the framers or legislators adopting the code should have used clear and ex-

plicit language if they had so intended. See, Cook Grains, Inc. v. Fallis, *supra*; Loeb & Co., Inc. v. Schreiner, *supra*. No citation of authority for this proposition is given in either case.

In eight cases, with facts similar to those in the present case, courts from other jurisdictions have held that a farmer is a merchant. See, Nelson v. Union Equity Co-op. Exchange, 548 S. W. 2d 352 (Tex., 1977); Sierens v. Clausen, 60 Ill. 2d 585, 328 N. E. 2d 559 (1975); Rush Johnson Farms, Inc. v. Missouri Farmers Assn., Inc., 555 S. W. 2d 61 (Mo. App., 1977); Currituck Grain Inc. v. Powell, 28 N. C. App. 563, 222 S. E. 2d 1 (1976); Ohio Grain Co. v. Swisshelm, 40 Ohio App. 2d 203, 318 N. E. 2d 428 (1973); Continental Grain Co. v. Brown, 19 U. C. C. Rept. Serv. 52 (W. D. Wis., 1976); Continental Grain Co. v. Martin, 536 F. 2d 592 (5th Cir., 1976).; Continental Grain Co. v. Harbach, 400 F. Supp. 695 (N. D. Ill., 1975). The rationale for holding that an experienced grain farmer is a merchant when he sells his crop, as set forth in these cases, is as follows.

First, it has been noted that it is unnecessary and improper to look to a dictionary definition of the term "merchant" in resolving the issue because the term is specifically defined in section 2-104 of the code. See, Nelson v. Union Equity Co-op. Exchange, *supra*; Currituck Grain Inc. v. Powell, *supra*. It has also been stated that nothing in the code indicates that the framers contemplated exempting farmers from merchant status. See Continental Grain Co. v. Brown, *supra*. Therefore these courts have referred solely to the specific statutory definition of the term "merchant," and have not resolved the issue by reference to the "plain and ordinary" meaning of the term, or to unstated legislative intent.

Courts holding farmers to be merchants have rejected the view that a farmer is a simple tiller of the soil unaccustomed to the affairs of business and the market place. They have noted that the practices

involved in the marketing of crops are well known to, and widely followed by, farmers, and that the marketing of a crop is as important to the farmer as the raising of it. See, Sierens v. Clausen, *supra*; Rush Johnson Farms, Inc. v. Missouri Farmers Assn., Inc., *supra*; Currituck Grain Inc. v. Powell, *supra*; Ohio Grain Co. v. Swisshelm, *supra*. Viewing the farmer as an agribusinessman, these courts have concluded that a farmer is not a casual or inexperienced seller, but that he is a professional with respect to the sale of his crop.

Courts holding a farmer to be a merchant have also relied on the language in the Comment, part 2, to section 2-104 of the code. In that comment it is stated that four provisions applicable to merchants in Article 2 dealing with the statute of frauds, firm offers, confirmatory memoranda, and modification "rest on normal business practices which are or ought to be typical of and familiar to any person in business. For purposes of these sections almost every person in business would, therefore, be deemed to be a 'merchant' under the language 'who . . . by his occupation holds himself out as having knowledge or skill peculiar to the practices . . . involved in the transaction . . .' since the practices involved in the transaction are non-specialized business practices such as answering mail." Courts relying on this language have stated that holding the farmer to be a merchant, insofar as the statute of frauds is concerned, places no greater burden on him or her than to answer mail and object to a written confirmation of an oral contract. See, Nelson v. Union Equity Co-op. Exchange, *supra*; Continental Grain Co. v. Brown, *supra*; Rush Johnson Farms, Inc. v. Missouri Farmers Assn., Inc., *supra*. It has been held that a farmer is a merchant not only because he has knowledge or skill peculiar to the practices involved in selling his crop, but also because he "deals" in goods of the kind (the crop), and has

knowledge or skill peculiar to the goods involved in the transaction. See, Nelson v. Union Equity Co-op. Exchange, *supra*; Rush Johnson Farms, Inc. v. Missouri Farmers Assn., Inc., *supra*.

Commentators have been uniformly critical of the cases which hold that a farmer who has established himself in the business of raising a crop and selling it for profit is not a merchant. See, 1 Anderson, Uniform Commercial Code, § 2-104:6, p. 221 (2d Ed., 1970); Bender's U. C. C. Service, Duesenberg & King, Sales and Bulk Transfers, § 1.02, pp. 1-18 to 1-20, and p. 13, 1977 Cum. Supp.; Note, The Farmer as Merchant Under the U. C. C., 53 N. D. L. Rev. 587 (1977); John F. Dolan, "The Merchant Class of Article 2: Farmers, Doctors, and Others," 1977 Wash. U. L. Q. 1.

I believe that the more persuasive reasoning on the issue is found in those cases in which farmers have been held to be merchants. A farmer whose occupation is raising grain and selling it for a profit can hardly be considered a "casual" seller. Under the statutory definition, the term "merchant" includes almost every person in business insofar as the statute of frauds is concerned since the practices involved in the relevant transaction are nonspecialized business practices such as answering mail. See Comment, part 2, to section 2-104, U. C. C. The purpose of the merchant exception to the statute of frauds was to put professional buyers and sellers on an equal footing by changing former law under which a party who received a written confirmation of an oral agreement of sale, but who himself had not signed anything, could hold the other party to the contract without himself being bound. See, 1 Hawkland, A Transactional Guide to the Uniform Commercial Code, § 1.1201, pp. 25 to 27 (1964); White & Summers, Uniform Commercial Code, § 2-3, pp. 47, 48 (1972). Holding established grain producers to be merchants is consistent with this purpose.

This is not to say that farmers, as a class, are merchants as a matter of law. The inquiry in each case must be whether the farmer in question is in fact engaged in the business of raising and selling crops for a profit, as evidenced by his individual experience and prior activities. If the facts relevant to this question are undisputed, the trial court may properly determine whether the farmer in question is, or is not, a merchant as a matter of law. See, Nelson v. Union Equity Co-op. Exchange, *supra*; Decatur Cooperative Assn. v. Urban, *supra*. Otherwise it is a question of fact to be determined by the trier of facts. See Sand Seed Service, Inc. v. Poeckes, *supra*.

In the present case, the relevant facts are not in dispute. The defendant has been a wheat farmer for more than 30 years, and presently cultivates approximately 1,000 acres of land each year. He makes it his business to be conscious of wheat prices and changes in the market. He has sold his wheat to grain elevators many times, and sold more than 74,000 bushels of wheat to the plaintiff alone between 1967 and 1973. On these facts, I believe that the trial court erred in concluding that the defendant was not a merchant. Defendant's primary occupation was clearly raising and selling wheat for a profit, and therefore he was a person who, by his occupation, held himself out as having knowledge peculiar to the practices involved in the transaction of selling grain. See Nelson v. Union Equity Co-op. Exchange, *supra*.

Although I conclude that the defendant was acting as a merchant when he entered into the oral contract, I agree that the contract is unenforceable because the defendant did not receive a confirmation in writing of the oral contract within a reasonable time. Although it is possible to dispose of this case solely on that ground, I believe that this court should resolve the question of whether the defendant was a merchant and settle the law in this area.

SPENCER, J., concurring.

I fully concur with the opinion herein. I do disagree, however, with the concurring opinion of Brodkey, J., suggesting that the defendant was acting as a "merchant," as defined in the code, when he entered into the oral contract. I agree that courts in other jurisdictions are sharply divided on whether a farmer who sells the crop he raises is a merchant under the Uniform Commercial Code.

I am in full agreement with the five cases cited by the concurring opinion that a farmer who only sells his crop annually is not a professional with respect to such sales but is merely a casual seller within the meaning of the Uniform Commercial Code. I do not believe we should extend the Uniform Commercial Code by construction to cover an area which was not specifically considered by its drafters. I am certain it was not considered by our legislators when the Uniform Commercial Code was adopted in Nebraska.

Of the eight cases cited by the concurring opinion for the other view, I call attention to the fact that three of them are federal decisions, two from federal District Courts, and one from the Fifth Circuit Court of Appeals. I believe the cases denying the application of the term "merchant" to a farmer who sells his own products state the better rule for a farm state like Nebraska.

In Lish v. Compton, 547 P. 2d 223 (Utah, 1976), the Utah court, in passing on this point, said: " * * * we think it is neither consistent with the intent and purpose of the statute, nor with the ordinarily understood meaning of its language, to apply it (the term 'merchant') to anyone such as this defendant who simply sells his crops annually."

The Alabama Supreme Court reached a similar result in Loeb & Co., Inc. v. Schreiner, 294 Ala. 722, 321 So. 2d 199 (1975), where the court held that the framers of the Uniform Commercial Code did not contemplate that farmers should be included among

those considered to be merchants. The Alabama court relied heavily on the fact that the defendant sold only products which he raised. The court said: "Although there was evidence which indicated that the appellee here had a good deal of knowledge, this is not the test. There is not one shred of evidence that appellee ever sold anyone's cotton but his own. He was nothing more than an astute farmer selling his own product. We do not think this was sufficient to make him a dealer in goods."

In Cook Grains, Inc. v. Fallis, 239 Ark. 962, 395 S. W. 2d 555 (1965), the Arkansas court concluded that the statutory provision in question was not intended to include a farmer within the designation of "merchant." In that case the court relied heavily on the fact that the farmer dealt only in commodities which he had raised.

Another case supporting this conclusion is Decatur Cooperative Assn. v. Urban, 219 Kan. 171, 547 P. 2d 323 (1976). The Kansas court said: "The concept of professionalism is heavy in determining who is a merchant under the statute. The writers of the official UCC comment virtually equate professionals with merchants — the casual or inexperienced buyer or seller is not to be held to the standard set for the professional in business. The defined term 'between merchants', used in the exception proviso to the statute of frauds, contemplates the knowledge and skill of professionals on each side of the transaction. The transaction in question here was the sale of wheat. Appellee as a farmer undoubtedly had special knowledge or skill in raising wheat but we do not think this factor, coupled with annual sales of a wheat crop and purchases of seed wheat, qualifies him as a merchant in that field."

In Sand Seed Service, Inc. v. Poeckes, 249 N. W. 2d 663 (Iowa, 1977), the Iowa court held: " * * * we hold a farmer, in order to be held as a merchant, must be (1) a dealer who deals in the goods of the

kind involved, or (2) he must by his occupation hold himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction, or (3) he must employ an agent, broker or other intermediary who by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction." The Iowa court held that where the undisputed facts only showed that Poeckes was a farmer who annually sold what he himself grew, this would not bring him within the definition of the term "merchant" in the UCC.

The question as to whether or not a farmer in a particular instance is a merchant is a question of fact. If the farmer bought products only for his own use and sold only the products he raised himself, regardless of how much knowledge he might have in those two activities, I would not consider him a merchant. It would be in the instance where he was dealing with farm products raised by others that I would so consider him.

As our opinion notes, it was not necessary to reach this question in the opinion. The question should be reserved, as it has, for another day where the question is decisive of the appeal. We should not foreclose a full discussion of the issue by an advisory opinion in a case where the issue is not decisive.