772 F.2d 908
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
TEL-TREADS, A DIVISION OF TELECI, INC., AND TIRE ENGINEERS
OF INDIANA, PLAINTIFFS-APPELLEES,
v.
MONTGOMERY WARD & CO., INC., DEFENDANT-APPELLANT.
 NO. 84-5774
 United States Court of Appeals, Sixth Circuit.
 8/20/85
 
 W.D.Tenn.
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE
 Before: CONTIE, WELLFORD, and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Tel-Treads, Inc., filed this diversity action against defendant, Montgomery Ward & Co., in September 1978, alleging breach of an oral sales agreement. Montgomery Ward defended by asserting first that no contract was ever agreed upon, and, second, by asserting the statute of frauds. In July 1980 the case was tried to a jury, with a verdict being returned in favor of Tel-Treads in the amount of $669,951.80. On appeal, this court reversed and remanded for a new trial, finding the district court erroneously submitted certain aspects of the statute of frauds issue to the jury. No. 82-5070 (6th Cir. May 17, 1983). It was further pointed out that the district court erred by applying Tennessee law and in refusing to instruct the jury properly regarding mitigation of damages. Upon retrial, a second jury verdict was rendered in favor of Tel-Treads, this time in a substantially larger amount. Montgomery Ward again appeals the verdict. We now AFFIRM.
 
 I.
 
 2
 In November 1977, Curtis Graves, president of Tel-Treads, met with William Leske, a retread tire buyer for Montgomery Ward, in Wichita, Kansas. Both parties admit that serious contract negotiations took place at this meeting, and that an agreement was reached concerning the prices at which Montgomery Ward would propose to purchase tires from Tel-Treads over the course of the next year. Graves further asserts that not only was a price agreed upon, but an exact quantity to be purchased settled. Leske, on the other hand, testified and appellant maintains that no exact quantity was ever agreed upon. No formal written contract was ever executed by the parties.
 
 
 3
 Sometime in early 1978 Montgomery Ward and Tel-Treads began experiencing difficulties in their ongoing business relationship. In January, Montgomery Ward forwarded a letter to Tel-Treads complaining about Tel-Treads' method of operation. Graves and Leske later met to discuss these complaints, and apparently came to some sort of accord. Montgomery Ward again complained in March and May of 1978, and again personal meetings between Graves and Leske seemingly ironed out their difficulties.
 
 
 4
 At Graves' and Leske's last meeting on May 26, 1978, certain shipments that Tel-Treads intended to make on June 1 came to the forefront. Leske informed Graves that Montgomery Ward would not accept the shipments. As a result, Graves forwarded a letter, dated June 1, 1978, to Leske's superior, R. M. Gardner, expressing concern over the demise of the Montgomery Ward/Tel-Treads business relationship, and also outlining what he (Graves) believed to be their agreement. At one point in the three page letter, Graves stated:
 
 
 5
 On November 17, 1977 you and I met in Wichita, Kansas to tour our new facility and work out contract agreements for your retread requirements for 1978. It was determined at this meeting that by using a 75% efficiency factor that we could produce approximately 375,000 units. The breakdown you gave me was 150,000 highway tires, 150,000 mud and snow bias tires and 75,000 mud and snow radial tires. Our shop at this point was set up to produce this ratio of highway v. mud and snow. I was to continue to build mud and snow bias and start building mud and snow radials to start shipping into the Alsip warehouse in Chicago beginning February 1, 1978.
 
 
 6
 Montgomery Ward admitted receipt of this letter, and does not deny that it learned of the letter's contents. Montgomery Ward, moreover, failed to respond in any fashion.
 
 
 7
 Kansas law was earlier determined to be applicable to this dispute. The district court concluded that under the pertinent Kansas Code, a part of the Uniform Commercial Code, the June 1 letter was sufficient for purposes of the statute of frauds. It accordingly submitted Tel-Treads' claim to the jury based on a simple contract theory as well as under plaintiff's asserted theory of detrimental reliance. Instructions concerning Montgomery Ward's potential statute of frauds defense were also given. The jury returned a verdict for Tel-Treads under its contract claim only. Tel-Treads was found to be entitled to no recovery under its theory of detrimental reliance.
 
 II.
 
 8
 Kansas has adopted Article 2 of the UCC, along with the relevant provisions of the statute of frauds:
 
 
 9
 Formal requirements; statute of frauds. (1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.
 
 
 10
 (2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.
 
 
 11
 Kan. Stat. Ann. Sec. 84-2-201(1) and (2). As noted in this court's previous opinion, to succeed under subpart (2) of Sec. 84-2-201, plaintiff must show:
 
 
 12
 (1) both parties are merchants;
 
 
 13
 (2) the writing is in confirmation of a prior oral transaction and is sufficient against the sender;
 
 
 14
 (3) the writing was received within a reasonable time after the contract was made;
 
 
 15
 (4) the merchant who received the confirmation had reason to know its contents; and
 
 
 16
 (5) the merchant who received the confirmation did not give written notice of its objection within ten days after the date of receipt.
 
 
 17
 No. 82-5070, slip op. at 3. Here, elements (1) and (5) are admitted by Montgomery Ward, and are not in dispute. The other three elements, however, are challenged.
 
 A. The Writing as Confirmation
 
 18
 Montgomery Ward argues first that the June 1 letter is insufficient for purposes of the statute of frauds because it does not constitute a 'writing in confirmation of the contract.' See UCC Sec. 2-201(2). It claims that to satisfy this requirement, a writing must, in and of itself, 'completely [represent] an acknowledgement or admission of the party of an existence of an agreement, promise or undertaking which obligates [one] to pay or perform as alleged.' Brief for Appellant at 13 (quoting N. Dorman & Co. v. Noon Hour Food Products, Inc., 501 F. Supp. 294, 298 (E.D.N.Y. 1980)). Further, it argues that the quantity term found in the letter is something less than definite, evidencing the speculative nature of the letter.
 
 
 19
 The district court disagreed with Montgomery Ward's contentions, stating:
 
 
 20
 Now, on the question of whether this court feels that is sufficient confirmation, it comes to as no news to anybody in this lawsuit, . . . from all of this proof that letter had to have been, it was--it was Mr. Graves' version of a confirmation of the agreement that he understood or thought that he had with Mr. Leske and Montgomery Ward. Now that is just the way . . . it is.
 
 
 21
 J/A at 160. We agree with the district court that under Kansas law the writing was a sufficient confirmation.
 
 
 22
 Kansas has taken a much more liberal approach than that urged by Montgomery Ward. In Southwest Engineering Co. v. Martin Tractor Co., 205 Kan. 684, 473 P.2d 18, 22 (1970), the Kansas Supreme Court stated that 'the three invariable requirements of an enforceable written memorandum under 84-2-201 are that it evidence a sale of goods, that it be signed or authenticated, and that it specify quantity.' (Emphasis added). As to the first requirement, the court stated: 'Under the Code the writing does not need to incorporate all the terms of the transaction, nor do the terms need to be stated precisely. The Code does require that the writing be broad enough to indicate a contract of sale between the parties; . . ..' (Citation omitted).
 
 
 23
 In our case, the writing was signed by the sender, Tel-Treads, and because both the parties are merchants, it fulfills the authentication requirement. See J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code 63 (1980) (hereinafter White and Summers). A quantity is also included, and thus the third requirement is satisfied. The question focuses on whether the writing evidences a sale of goods, or otherwise indicates the formation of a contract.
 
 
 24
 In Southwest Engineering, an oral contract of sale was negotiated by the parties. During negotiations, the seller's agent took out a piece of paper and listed the component parts of two generators he proposed to sell, along with the respective prices. He also listed the accessories to both generators along with their corresponding costs. The trial court found this memorandum sufficient for purposes of the statute of frauds found in Sec. 84-2-201(1). The Kansas Supreme Court affirmed, quoting favorably Comment 1 to UCC 2-201: 'All that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction.' 473 p.2d at 22. Even though the memo in that case nowhere spoke of 'agreement,' or 'contract,' or even 'sale,' the court found it sufficient.[1]
 
 
 25
 Southwest Engineering persuades us that the district court was correct in finding the writing a sufficient confirmation. Whether the question is sufficiency under UCC 2-201(1) or UCC 2-201(2), the analysis is the same. See White and Summers at 64 n.73 and accompanying test.[2] The cases relied upon by Montgomery Ward can be distinguished as either arising under New York law (a very narrow interpretation of UCC 2-201), involving written offers or language otherwise speaking only in futuristic terms, or lacking quantity terms in the writings. See Oswald v. Allen, 417 F.2d 43 (2d Cir. 1969) (New York law); N. Dorman & Co., 501 F. Supp. 294 (E.D.N.Y. 1980) (New York law); Ace Concrete Products Co. v. Charles J. Rogers Construction Co., 69 Mich. App. 610, 245 N.W.2d 353 (1976) (no quantity term); R. S. Bennett & Co. v. Economy Mechanical Industries, Inc., 606 F.2d 182 (7th Cir. 1979) (evidence of offer only); C. R. Fedrick, Inc. v. Borg-Warner, Corp., 552 F.2d 852 (9th Cir. 1977) (speaks to future action).
 
 B. Reasonableness of Delay
 
 26
 Montgomery Ward's most persuasive and troubling argument deals with the reasonableness of Tel-Treads' delay in sending the memorandum. It was not forwarded until 6 and one-half months had elapsed following the November 1977 meeting. The district court found this not unreasonable as a matter of law, and the jury concluded that as a factual matter the delay was reasonable.
 
 
 27
 In this court's previous opinion in this case the reasonable time requirement was held to present a 'potential' jury question. Generally, this does present a fact question for the jury. There does arise, however, a point at which the delay becomes so lengthy that it must be deemed unreasonable as a matter of law. See, e.g., Lish v. Compton, 547 p.2d 223, 227 (Utah 1976) (twelve days unreasonable under circumstances); Cargill, Inc. v. Stafford, 553 F.2d 1222 (10th Cir. 1977) (twenty-five days unreasonable); Kimball County Grain Corp. v. Yung, 200 Neb. 233, 263 N.W.2d 818 (1978) (delay of more than six months, coupled with lack of excuse, unreasonable).
 
 
 28
 The comments to UCC Sec. 2-201 refer to UCC Sec. 1-204(2), which states: 'What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action.' The nature and purpose of the action under UCC Sec. 2-201(2) is to provide some basis for believing a contract has been formed. The longer the delay in reducing the agreement to some form of writing, the less the probability that there ever was a contract in the first place. Here, however, Tel-Treads claims the lengthy delay is justified because Montgomery Ward led it on by making and breaking promises. Thus, it argues, the circumstances support a finding that the delay was reasonable.
 
 
 29
 While we are not impressed by Tel-Treads' proffered justification for the delay, we are not willing to establish a per se rule that six and one-half months is unreasonable as a matter of law. We acknowledge that this issue is a difficult one and that the delay involved represents the outer limits of what may be reasonable, but we affirm the resolution of this issue in favor of Tel-Treads.
 
 C. Reason to Know of the Letter's Contests
 
 30
 Montgomery Ward's final argument under the statute of frauds is that it had no reason to know Tel-Treads' letter was intended to be a confirmatory memorandum. The question, however, is not whether Montgomery Ward knew what the letter was intended to be, but is whether it was fully aware of the letter's contents. As previously stated by this court in No. 82-5070, the inquiry is whether 'the merchant who received the confirmation had reason to know its contents; . . ..' Slip op. at 3 (emphasis added). Here, it is undisputed that Montgomery Ward actually received the letter and was fully aware of its contents. The letter was, therefore, a sufficient confirmation.
 
 III.
 
 31
 As a final matter, Montgomery Ward argues that because the jury found in favor of Tel-Treads on its contract theory, and against Tel-Treads on its promissory estoppel theory, the verdict is necessarily inconsistent and must be set aside. We find this argument unpersuasive. Promissory estoppel, or detrimental reliance as it is often referred to, is a theory of recovery quite different from general contract principles. To succeed under promissory estoppel, a party generally must show:
 
 
 32
 (1) a promise reasonably expected to induce action or forbearance;
 
 
 33
 (2) action or forbearance on the part of the promisee;
 
 
 34
 (3) reasonable reliance; and
 
 
 35
 (4) irreparable detriment;
 
 
 36
 Restatement (Second) of Contracts Sec. 90 (1981).
 
 
 37
 Moreover, recovery is only justified under this theory to avoid injustice and generally under equitable principles. Id.; see generally Decatur Co-operative Ass'n v. Urban, 219 Kan. 171, 547 p.2d 323 (1976). The jury was instructed on all these elements in this case.[3]
 
 
 38
 In the present case the jury could have found any one of the elements of promissory estoppel lacking and this would still be consistent with its finding that a valid contract was made. Because the verdicts can thus be reconciled, they are not inconsistent. Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Lfd., 369 U.S. 355, 364 (1962). Bernardini v. Rederi A/B Saturnus, 512 F.2d 660 (5th Cir. 1975), where the court held irreconcilable findings of negligence and seaworthiness, is clearly distinguishable.
 
 IV.
 
 39
 We therefore AFFIRM the jury verdict for Tel-Treads.
 
 
 
 [1]
 We note that this broad view has been criticized by White and Summers as perhaps 'go[ing] too far.' White and Summers at 62 n.63. We must, however, apply the law as Kansas' highest court has interpreted it
 
 
 [2]
 'Admittedly this latter language is not identical with the former, but it is submitted that our earlier analysis of the meaning of the 'sufficient to indicate' language applies to the 'in confirmation' language of 2-201(2).' White and Summers at 64
 
 
 [3]
 Since the injustice requirement is an equitable consideration, it may be found by the court and not the jury. See R. S. Bennett & Co., 606 F.2d 182 (7th Cir. 1979). Promissory estoppel, as noted in section 90 of the Restatement, is generally used as a means to circumvent the requirement of consideration. Reliance as noted in section 139 of the Restatement is used to circumvent the statute of frauds. See Walker v. Ireton, ---- Kan. ----, 559 P.2d 340 (1977) (court applies Restatement (Second) of Contracts Sec. 139, dealing with reliance and statute of frauds)